No. **729·15**

IN THE

COURT OF CRIMINAL APPEALS

AT TEXAS, AUSTIN

ORIGINAL

---

JAMES A. BROWN

V.

THE STATE OF TEXAS

---

APPEALED FROM THE 331st DISTRICT OF
TRAVIS COUNTY BEFORE JUSTICES
PURYEAR, PEMBERTON, AND BOURLAND
AFFIRMED -- OPINION BY JUSTICE PURYEAR

---

ON PETITION FOR REVIEW FROM THE
THIRD COURT OF APPEALS
TEXAS, AUSTIN, TRAVIS
NO. 03-13-00760-CR

FILED IN
COURT OF CRIMINAL APPEALS

JUL 02 2015

Abel Acosta, Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 29 2015

Abel Acosta, Clerk

JAMES A. BROWN
TDCS-ID #1893446
1313 COUNTY Rd. 19
LAMESA, TX 79331

NO ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES

## APPELLANT

JAMES A. BROWN

## APPELLANTS' COUNSEL

ACTING PRO SE

## APPELLEE

TRAVIS COUNTY DISTRICT ATTORNEY'S OFFICE

## APPELLEE'S COUNSEL

ROSEMARY LEHMBERG

OFFICE OF THE TRAVIS COUNTY DISTRICT ATTORNEY

APPEAL DIVISION

P.O. BOX 1748

AUSTIN, TX 78701

(512) 854-9400

(512) 854-9789 FACSIMILE

# TABLE OF CONTENTS

IDENTITY OF PARTIES . . . . . . . . . . (i)

TABLE OF CONTENTS . . . . . . . . . . (ii)

INDEX OF AUTHORITIES . . . . . . . . (iv)

STATEMENT OF CASE . . . . . . . . . . (2)

STATMENT OF JURISDICTION . . . . . . (2)

STATEMENT OF ISSUES PRESENTED . . . . . (1)

I. DID THE APPELLATE COURT ERR WHEN IT DETERMINED THERE WAS LEGALLY SUFFICIENT EVIDENCE TO CONVICT APPELLANT FOR THE OFFENSE OF RETALIATION PURSUANT TO TEXAS PENAL CODE § 36.06 ? . . . . . . . . . . . . . . . (3)

    STATEMENT OF FACTS . . . . . . . . (3)

    SUMMARY ARGUMENT . . . . . . . . (3)

ARGUMENT . . . . . . . . . . . . . . . (4)

II. DID THE APPELLATE COURT ERR WHEN IT OVERRULED APPELLANT'S MOTION TO QUASH INDICTMENT WAS ONLY AN ORAL MOTION WHEN A PRO SE WRITTEN MOTION HAD ALSO BEEN FILED? . . . . . . . . . . . . . . . . (10)

    STATMENT OF FACTS . . . . . . . (10)

    SUMMARY ARGUMENT . . . . . . . (10)

ARGUMENT . . . . . . . . . . . . . (11)

III. DID THE APPELLATE COURT ERR WHEN IT OVERRULED APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL? . . . . . . . (17)

# INDEX OF AUTHORITIES

## FEDERAL CASES

Am. Bd. OF PSYCHIATRY & NEUROLOGY v. JOHNSON-POWELL, 129 F.3d 1,3 (1st CIR. 1997) · · · · · · · · · · · · · · · · · · 12

ANDERSON v. HARLESS 459, U.S. 4,6, 103 S.Ct. 276, 74 L.Ed. 2d 3 (1982) · · · · · · · · · · · · · · · · · · 8

BRADY V. MARYLAND 373 U.S. 83, 87 (1963) · · · · · · · · · 15

BROOK v. TEXAS, 381 F.2d 619 (5th CIR. 1967) · · · · · · · · 22

BROWN V. ALLEN 344 U.S. 443, 502, 97 L.Ed. 469, 73 S.Ct. 397 (1953) · · · · · · · · · · · · · · · · · · · 22

BULLCOMING V. NEW MEXICO, 564 U.S. ___ 2011 · · · · 23

CALDERON v. THOMPSON, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed. 2d 728 (1998) · · · · · · · · · · · · · · · 9

CARUSO V. ZELINSKY 689 F.2d 438 (3rd CIR. (1982) · · · 20

CHAMBERS V. MISSISSIPPI, 410 U.S. 284, 93 S.Ct. 1038 (1973) · · · · · · · · · · · · · · · · · · · 15

CRAWFORD V. WASHINGTON, 541 U.S. 36 (2003) · · · · · · 24

FRANCIS V. HENDERSON, 425 U.S. 536, 48 L.Ed. 2d 149, 96 S.Ct. 1708 (1976) · · · · · · · · · · · · · · · · 27

GIDEON V. WAINWRIGHT 372 U.S. 335, 339, 344, 9 L.Ed. 2d 799, 802, 805, 83, S.Ct. 792, 93 A.L.R. 2d 733 (1963) · · · · · 27

GLOVER V. UNITED STATES, 531 U.S. 198, 203-204, 121 S.Ct. 696, 148 L.Ed. 2d 604 · · · · · · · · · · · · · · · · 21

HILL V. LOCKHART, 474 U.S. 52 (1985) · · · · · · · · · 21

HOLLINGSWORTH V. PERRY; U.S. 2010, 130 S.Ct. 705, 175 L.Ed. 2d. 657 · · · · · · · · · · · · · · · · · · · 16

JACKSON V. VIRGINIA, 443 U.S. 307, 319 (1979) · · · · · · 7, 14

JAMES V. KENTUCKY, 466 U.S. 341, 351, 104 S.Ct. 1830, 80 L.Ed 2d 346 (1984) . . . . . . . . . . . . . . . . . . 16

JAMES RIVER INS. CO. V. RAPID FUNDING, LLC, C.A. 10 (COLO) 2011, 658 F.3d 1207 . . . . . . . . . . . . . . . 16

LAFLER V. COOPER, 132 S.Ct. 1376 (2012) . . . . . . . 21

McCOLLUM AVIATION INC. V. CRIM ASSOCIATES, INC., S.D. FLA. 1977, 438 F.SUPP. 245 F. CIV. PRO. 39 . . . . . . 15

MELENDEZ - DIAZ V. MASSACHUSETTS, 577 U.S. _____ 2009 . . . . . . . . . . . . . . . . . . . . . . . . . 23

MISSOURI V. FRYE, 132 S.Ct. 1399 (2012) . . . . . . 21

MOORE V. CZERNIAK, NO. 04 - 15713, JULY 28, 2009 . . . . 21

OSBORNE V. OHIO, 495 U.S. 103, 122-125, 110 S.Ct. 1691, 109 L.Ed. 2d 98 (1990) . . . . . . . . . . . . . . . 14

PEDRERO V. WAINWRIGHT, 590 F.2d 1383, 1390 (5th CIR. [FLA.] 1979) . . . . . . . . . . . . . . . . . . . 13

POINTER V. TEXAS, 380 U.S. 400, 85 S.Ct. 1065 (1965) . . . . 23

SHADY GROVE ORTHOPEDIC ASSOCIATES, P.A. V. ALLSTATE INS. CO. U.S. 2010, 130 S.Ct. 1431, 176 L.Ed. 2d 311, ON REMAND 380 FED. APPX. 96, 2010 WL 2303325 . . . . . . . . . . 16

STRICKLAND V. WASHINGTON 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed 674 (1984) . . . . . . . . . . . . . . . 19, 23, 25, 26

THACKER V. PAYTON, 206 VA. 771, 146 S.E. 2d 176 (1966) . . . . 25

THOMAS V. BETO, 423 F.2d 642 (5th CIR 1970) . . . . . .

TOLLETT V. HENDERSON 411 U.S. 248, 327 (1973) . . . . . . 19

ULSTER COUNTY V. ALLEN 442 U.S. 140, 99 S.Ct. 2213 L.Ed. 777 (1979) . . . . . . . . . . . . . . . . . . . . . 8

UNITED STATES V. BAGLEY 473 U.S. 667 (1985) . . . . . . 15

UNITED STATES V. DECOSTER, 159 U.S. APP. D.C. 326, 487 F.2d 1197 (1973) . . . . . . . . . . . . . . . . . . . . 28

UNITED STATES V. KATZ 425 F.2d 928 (CA2 1970) . . . . 28

UNITED STATES EX REL. WILLIAMS V. TWOMEY, 510 F.2d 634,640 (CA7 1975) . . . . . . . . . . . . . . . . . 28

WOOD V. ALLEN 130 S.Ct. 841 (2010) . . . . . . . . . 22

## STATE CASES

ABDNOR V. STATE, 871 S.W. 2d 726,738 (TEX. CR. APP. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

BLUE V. STATE, 41 S.W. 3d 129 (TEX. CR. APP. 2000) . . . . . 24

BOOZER V. STATE 717 S.W. 2d 608 (TEX. CR. APP. 1989) . . . . 9

BROOK V. STATE, 323 S.W. 3d 843,895 (TEX. CR. APP. 2010) . . . . 3, 9

BUTLER V. STATE 716 S.W. 2d 48,54 (TEX. CR. APP. 1986) . . . . . . 26

COOK V. STATE, 902 S.W. 2d 471, 475-76 (TEX. CRIM. APP. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 27

CORMIER V. STATE, 955 S.W. 2d 161, 163-164 (TEX. APP., AUSTIN 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

DELGADO V. STATE 235 S.W. 3d 244, 252-253 (TEX. CR. APP 2007) . . . . . . . . . . . . . . . . . . . . . . . 14

DOWDEN V. STATE, 537 S.W. 2d 5 (TEX. CR. APP. 1976) . . . . . 12

EX PARTE AXEL 757 S.W. 2d 369 (TEX. CR. APP. 1988) . . . . . 26

EX PARTE DUFFY, 607 S.W. 2d 507, 516 (TEX. CR. APP 1980) . . . . 22

EX PARTE LEMKE, 13 S.W. 3d 796 (TEX. CR. APP. 2000) . . . . 21

EX PARTE PATTERSON 740 S.W. 2d 766 (TEX. CR. APP. 1976) . . . . 6

EX PARTE WELBORN 785 S.W. 2d 391 (TEX. CR. APP. 1990) . . . . 26

EX PARTE WOODS, 176 SW 3d 224 (TEX. CR. APP. 2005) . . . . 23

EX PARTE VARELAS, 45 SW. 3d 627,630 (TEX. CR. APP. 2001) . . . . 20

FRANGIAS V. STATE, 392 S.W. 3d 642,653 (TEX.CR.APP. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

GARCIA V. STATE, 57 S.W. 3d 436, 440 (TEX.CRIM.APP. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

GOVAN V. STATE, 671 S.W. 2d 660,663 (TEX.APP. HOUSTON [1st DIST.] 1984,PET. REF.) . . . . . . . . . . . . . . . . . . . . . 7

MORENO V. STATE, 858 S.W. 2d 453,463 (TEX.CRIM.APP. 1993), CERT. DENIED, 510 U.S. 966 (1993) . . . . . . . . . . . . . . 7

NELSON V. STATE 149 S.W. 3d 175 (TEX.CR. APP. 1976) . . . . . . 25

PIKE V. STATE, 758 S.W. 2d 357, 362 (TEX.APP., WACO 1988, PET. REF.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

REYNOLDS V. STATE, 547 S.W. 2d 590,591 -592 (TEX.CR.APP. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

RODGERS V. STATE, 180 S.W. 3d 716, 724 (TEX.APP, WACO, 2005 NO PET. H.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

RODRIGUEZ V. STATE, 340 S.W. 2d 61 (TEX.CR.APP. 1960) . . . . . 20

SMITH V. STATE, 435 S.W. 2d 526,527 (TEX.CR.APP 1969) . . . . . 9

STATE V. EDMOND, 933 S.W. 120,128 (TEX.CRIM.APP. 1996) . . . . 12

SWABADO V. STATE, 597 S.W. 2d 361, 364 (TEX.CR. APP. 1980) . . 12

TEMPLE V. STATE, 14-08-00074 CR (TEX.APP -HOUSTON [14th DIST.] 2011 NO PET.) . . . . . . . . . . . . . . . . . . . . . . . . 8

THOMPSON V. STATE, 615 S.W. 2d 760, 761 (TEX.CRIM.APP.1981) . . 7

THOMPSON V. STATE 9 S.W. 3d 808,813 (TEX.CRIM.APP 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TIPPINS V. STATE, 530 S.W. 2d 110,111 (TEX.CRIM.APP.1975) . . . 7

WIGGINS V. SMITH, 534 SW 2d (2003) . . . . . . . . . . . . . . 23

# RULES, CONSTITUTION, ARTICLES

GOV'T CODE § 508.149 . . . . . . . . . . . . . 6, 26

PEN. C. § 1.03(a) . . . . . . . . . . . . . 5

PEN. C. § 1.07(a)(1) . . . . . . . . . . . . 3

PEN. C. § 1.07(a)(8) . . . . . . . . . . . . 5

PEN. C. § 1.07(a)(9)(C)(F) . . . . . . . . . . 27

PEN. C. § 1.07(a)(17) . . . . . . . . . . . . 5

PEN. C. § 1.07(a)(25) . . . . . . . . . . . . 5, 11

PEN. C. § 1.07(a)(46) . . . . . . . . . . . . 5

PEN. C. § 1.07(a)(48) . . . . . . . . . . . . 5

PEN. C. § 22.01 . . . . . . . . . . . . . 5, 11, 17

PEN. C. § 22.02 . . . . . . . . . . . . 5, 6, 11, 17

PEN. C. § 36.06 . . . . . . . . . . . . . 5, 11, 17

TEX. C. CRIM. PROC. ART. 1.14 . . . . . . . . . 10, 13

TEX. C. CRIM. PROC. ART. 21.02 (7),(i) . . . . . . . 9, 13

TEX. C. CRIM. PROC. ART. 21.03 . . . . . . . . . 9

TEX. C. CRIM. PROC. ART. 21.04 . . . . . . . . . 9

TEX. C. CRIM. PROC. ART. 27.10 . . . . . . . . . 10

TEX. C. CRIM. PROC. ART 42.12 § (3g) . . . . . . . 6, 26

TEX. CONST. ART. 1 § 10 . . . . . . . . . . . 9, 12, 13

TEX. CONST. ART. 1 § 19 . . . . . . . . . . . 11

T.R.A.P. 63.6 . . . . . . . . . . . . . 4, 11

T.R.A.P. 25.2 (a),(d) . . . . . . . . . . . . 26

T.R.A.P. 56.1 (a) . . . . . . . . . . . . 4

T.R.A.P. 60.2 (e) . . . . . . . . . . . . 28

T.R.A.P. 61.1 (a)(b) . . . . . . . . . . . . 4, 28

TEX. R. EVID. 201 (b)(c)(d)(e) . . . . . . . . . 13

TEX. R. EVID. 702, 703, 705(a) . . . . . . . . . 22

No. _____

IN THE

COURT OF CRIMINAL APPEALS

AT TEXAS, AUSTIN

JAMES A. BROWN

VS.

THE STATE OF TEXAS

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS.

COMES NOW JAMES A. BROWN, PRO SE, AND FILES THIS PETITION FOR DISCRETIONARY REVIEW IN APPEAL OF THE AFFIRMING OF HIS CONVICTION BY THE THIRD COURT OF APPEALS, AND IN SUPPORT, OFFERS THE FOLLOWING:

## STATEMENT OF ISSUE'S PRESENTED

I. DID THE APPELLATE COURT ERR WHEN IT DETERMINED THERE WAS LEGALLY SUFFICIENT EVIDENCE TO CONVICT APPELLANT FOR THE OFFENSE OF RETALIATION PURSUANT TO TEXAS PENAL CODE § 36.06?

II. DID THE APPELLATE COURT ERR WHEN IT RULED APPELLANT'S MOTION TO QUASH INDICTMENT WAS ONLY AN ORAL MOTION WHEN A PRO SE WRITTEN MOTION HAD ALSO BEEN FILED?

III. DID THE APPELLATE COURT ERR WHEN IT OVERRULED APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL?

(1)

## STATEMENT OF CASE

BROWN WAS CONVICTED BY BENCH OF THE OFFENSE OF RETALIATION ON THREE COUNTS ENHANCED AFTER A PLEA OF NOT GUILTY IN THE 331st JUDICIAL DISTRICT TEXAS, AUSTIN, TRAVIS BY PRESIDING JUDGE DAVID CRAIN; THE PUNISHMENT WAS ASSESSED BY THE BENCH AT FIFTEEN (15) YEARS CONFINEMENT. THIS CONVICTION WAS AFFIRMED BY THE COURT OF APPEALS FROM THE THIRD DISTRICT AT AUSTIN ON MAY 12, 2015 BY JUSTICE PURYEAR, PEMBERTON, AND BOURLAND AND IT WAS NOT PUBLISHED. NO MOTION FOR REHEARING WAS FILED. THIS PETITION WAS THEN FILED WITH THE CLERK OF THE COURT OF CRIMINAL APPEALS AFTER THE PETITIONER FILE A MOTION FOR EXTENSION TO WIT ON JUNE 24, 2015 .

## STATEMENT OF JURISDICTION

JURISDICTION OF THIS COURT IS INVOKED UNDER 4.03 AND 4.04 OF TEXAS CODE OF CRIMINAL PROCEDURE AS AN APPEAL FROM A FINAL CONVICTION AND SENTENCE IN 331st JUDICIAL DISTRICT OF TEXAS. NOTICE OF WAS TIMELY FILED IN ACCORDANCE WITH RULE 26.2 OF THE TEXAS RULES OF APPELLATE PROCEDURE. THE THIRD COURT OF APPEALS AFFIRMED THE TRIAL COURT'S JUDGMENT. JURISDICTION OF THIS COURT IS INVOKED UNDER RULE 68 OF THE TEXAS RULES OF APPELLATE PROCEDURE REGARDING PETITIONS FOR DISCRETIONARY REVIEW.

(2)

I. DID THE APPELLATE COURT ERR WHEN IT DETERMINED THERE WAS LEGAL SUFFICIENT EVIDENCE TO CONVICT APPELLANT FOR THE OFFENSE OF RETALIATION PURSUANT TO TEXAS PENAL CODE § 36.06?

## STATEMENT OF FACTS

THE APPELLATE COURT, COURT OF APPEALS (C.O.A) REST ITS OPINION ON THE INDICTMENT IN THIS CASE, THAT BROWN, "DID THEN AND THERE INTENTIONALLY OR KNOWINGLY THREATEN JOSEPH, LANEY, AND DYAR "BY AN UNLAWFUL ACT, TO-WIT: ASSAULT AND AGGRAVATED ASSAULT... IT FURTHER STATES THE THREATENED HARM DOESN'T HAVE TO BE IMMINENT. MOREOVER, C.O.A. CITES BROOK V. STATE, 323 S.W. 3d 893, 895 (TEX. CR. APP. 2010) EXPLAINING THAT "IT DO NOT REVIEW FACTUAL SUFFICIENCY OF THE EVIDENCE TO SUPPORT A JURY'S FINDING ON ELEMENTS OF A CRIMINAL OFFENSE THAT THE STATE IS REQUIRED TO PROVE BEYOND A REASONABLE DOUBT." THE APPELLATE COURTS PRESUMED THAT CONFLICTING INFERENCES WERE RESOLVED IN FAVOR OF THE CONVICTION AND DEFERED THAT TO RESOLUTION.

## SUMMARY ARGUMENT

EVERYTHING SHOULD BE STATED IN AN INDICTMENT WHICH IS NECESSARY TO BE PROVED. THE ACT, BY LAW, WHICH IS DECLARED A CRIMINAL OFFENSE, MUST BE SET FORTH IN PLAIN AND INTELLIGIBLE WORDS. AND WHERE A DEFENDANT'S CONDUCT IS PROHIBITED UNDER A GENERAL STATUTE AND A SPECIFIC STATUTE AND BOTH STATUTE HAVE THE SAME GENERAL PURPOSE, THE DEFENDANT MUST BE CHARGED UNDER THE SPECIFIC STATUTE. THE GREATER THE INVASION OF RIGHTS BY THE GOVERNMENT, THE GREATER THE AMOUNT OF EVIDENCE REQUIRED TO SHOW GOOD

(3)

REASON FOR DENYING THOSE RIGHTS. THE PURPOSE IS TO MINIMIZE THE POSSIBILITY OF ERROR, ESPECIALLY AS THE STAKES FOR THE INDIVIDUAL INCREASE. FURTHERMORE, PEN. C. § 36.06 IS UNCONSTITUTIONALLY APPLIED TO BROWN BECAUSE HE IS ACTUALLY INNOCENT AND BECAUSE THERE IS REASONABLE DOUBT THAT [H]E THREATEN TO [H]ARM ANYONE WITH "ASSAULT" OR "AGG. ASSAULT". AND IN THE INTEREST OF JUSTICE TO PREVENT THE MISCARRIAGE THEREOF, BROWN PURSUES THE FUNDAMENTAL FAIRNESS ENTITLED TO THE ACCUSED ABSENT FROM HYPOTHETICAL THEORIES AND DISCRIMINATING GENERALITIES ON FIGURATIVE SPEECH THAT SHOW NO UNLAWFUL ACT. CRIMINAL CASES ARE TRIED UNDER BEYOND A REASONABLE DOUBT ANALOG, NOT THE CLEAR AND CONVINCING ANALOG.

## ARGUMENT

BROWN GUIDES THIS COURT'S CONSIDERATION PURSUANT TEXAS RULE OF APPELLATE PROCEDURE (T.R.A.P.) 66.3 IN DECIDING WHETHER TO GRANT DISCRETIONARY REVIEW, ALSO T.R.A.P. 56.1(a) AND 61.1(a)(b) WHEN TRIAL COURT MADE AN ERROR OF LAW UNDERMINING THE FUNDAMENTAL FAIRNESS GUIDELINES ENTITLED TO DEFENDANTS UNDER FEDERAL CONSTITUTIONAL LAW, U.S. CONST. AMEND. VI AND XIV, WHERE VIOLATIONS RISE FROM FUNDAMENTAL DEFECTS IN THE INDICTMENT WHICH WAS THE CHARGING INSTRUMENT. THE INDICTMENT IN THE PERTINENT PARTS READ "DID THEN AND THERE INTENTIONALLY OR KNOWINGLY THREATEN" JOSEPH, LANEY, AND DYAR BY AN UNLAWFUL ACT, TO-WIT: ASSAULT AND AGGRAVATED ASSAULT... THE INDICTMENT WHEN READ, AS A WHOLE, CLEARLY DID NOT LIMIT THE APPLICATION OF THE REQUIRED MENTAL STATES TO THE RESULTS OF THE CONDUCT. THE CHARGE IS MISLEADING WHEN IT SAYS

(4)

INTENTIONALLY AND KNOWINGLY THREATENS, BUT OMITS THE STATUTORY ELEMENT "HARM", A ELEMENT WHICH IS NECESSARY TO PROVE GUILT OR TO AUTHORIZE A CONVICTION. THE STATUTORY WORD "HARM" HAS A TECHNICAL MEANING UNDER PEN. C. § 1.07(a)(25) AND MUST NOT BE OMITTED, NOR HAVE EQUIVALENT, OR SUBSTITUTE WORDS. SEE PEN. C. § 1.03(a) EFFECT OF CODE: CONDUCT DOES NOT CONSTITUTE AN OFFENSE UNLESS IT IS DEFINED AS AN OFFENSE BY STATUTE; ALSO REYNOLDS v. STATE, 547 S.W. 2d 590, 591-592 (TEX. CR. APP. 1976) EACH AND EVERY ELEMENT MUST BE PROPERLY PLEAD FOR INDICTMENT TO ALLEGE OFFENSE. THE INDICTMENT CHARGE FURTHER READS "BY AN UNLAWFUL ACT, TO-WIT: ASSAULT AND AGGRAVATED ASSAULT." TECHNICAL MEANING FOR "UNLAWFUL" [PEN. C. 1.07(a)(48)] AND THE TERM "ACT" [Id. § 1.07(a)(1)].

IN APPLYING "ASSAULT" AS A FACT OF AN UNLAWFUL ACT WE MUST EXPAND THE SCOPE OF TEX. PEN. C. § 22.01 TO ITS MANY SUBSECTIONS. IN THIS HYPOTHETICAL SITUATION BROWN WILL ASSUME THE COURTS BELOW BASED IT'S DECISION ON Id. § 22.01(a)(2) INTENTIONALLY OR KNOWINGLY THREATENS ANOTHER WITH [EMMINENT] BODILY INJURY..., THE TERM "BODILY INJURY" MEANS Id. § 1.07(a)(8). IT WOULD BE IMPROPER TO APPLY STATUTORY ELEMENTS OF RETALIATION § 36.06 TO STATUTORY ELEMENTS OF ASSAULT § 22.01 AND RENDER A GUILTY VERDICT.

IN VIEWING PEN. C. § 22.02 AGGRAVATED ASSAULT IN ITS HYPOTHETICAL Id. § 22.02(a)(1)(2) SCOPE; (1) THE TERM "SERIOUS BODILY INJURY" [Id. 1.07(a)(46)] AND (2) THE TERM "DEADLY WEAPON" [Id. § 1.07(a)(17)] WOULD IMPROPERLY APPLY STATUTORY ELEMENTS OF RETALIATION § 36.06 TO STATUTORY ELEMENTS OF AGG. ASSAULT

(5)

§ 22.02, UPON A GUILTY VERDICT.

THERE'S MANY DIFFERENT RECOLLECTIONS OF WHAT WAS SAID AND HEARD PERTAINING TO BROWNS ASSERTIONS THAT DAY, HOWEVER, NONE AMOUNTED TO "IMMINENT BODILY INJURY, "A CAUSE OF SERIOUS BODILY INJURY, "NOR THE USE OR EXHIBIT OF A DEADLY WEAPON DURING THE COMMISSION OF ASSAULT". A DEFENDANT IS ENTITLED TO NOTICE THAT THE STATE WILL PURSUE AN AFFIRMATIVE FINDING OF THE USE OR EXHIBITION OF A DEADLY WEAPON EX PARTE PATTERSON 740 S.W. 2d 766 (TEX.CR.APP.1987). DEFINITIONS OF TERM THAT INVOLVE ACT OR OMISSION OF THE DEFENDANT ARE ESSENTIALLY EVIDENTIARY AND NEED TO BE ALLEGED IN THE INDICTMENT; WORDS SUCH AS "SHOOTIN[G], "S[T]ABBING, " [K]ICKING, " [P]UNCHING, " [KILL]" ECT. MUST BE SHOWN SOME WHERE ON THE JUDGEMENT AND SENTENCE. SEE 5 ALR 5th 243, SUFFICIENCY OF BODILY INJURY TO SUPPORT ~~CHARGE~~ OF AGGRAVATED ASSAULT, OR ASSAULT WITH DANGEROUS OR DEADLY WEAPON. BROWN IS SERVING A 15 YEAR SENTENCE UNDER TEX. GOV'T. C. § 508.149 AND TEX. C. CRIM. PROC. ART. 42.12 § 3(g), WITHOUT THE COMPLAINT ALLEGING, CHARGING, OR ACCUSING THAT HE DID COMMIT A SPECIFIC OFFENSE CREATING A FATAL VARIANCE BY THE MISJOINDER VIOLATING UNWAIVABLE FUNDAMENTAL RIGHTS TO A FAIR AND IMPARTIAL TRIAL. THIS REPUGNANT INDICTMENT IS ALSO DUPLICITOUS IN THAT IT READS "ASSAULT AND "AGG. ASSAULT" UNDER RETALIATION.

THUS, AN EXTRANEOUS OFFENSE MAY GENERALLY BE CONSIDERED TO BE ANY ACT OF MISCONDUCT NOT SHOWN IN THE CHARGING INSTRUMENT THAT IS ALLEGED TO HAVE BEEN

(6)

COMMITTED BY THE DEFENDANT [PIKE V. STATE, 758 S.W. 2d 357, 362 (TEX. APP., WACO 1988, PET. REF.)]. THE ALLEGED ASSAULT AND AGG. ASSAULT IS EXTRANEOUS. IT IS IMPERMISSIBLE TO TIE BROWN TO AN EXTRANEOUS OFFENSE SOLELY BY IMPLICATION [SEE GOVAN V. STATE, 671 S.W. 2d 660, 663 (TEX. APP., HOUSTON [1st DIST.] 1984, PET. REF.) IMPERMISSIBLE TO INTRODUCE EXTRANEOUS OFFENSES COMMITTED IN MANNER SIMILAR TO OFFENSE ON TRIAL AND THEN SHOW THAT THERE WERE NO FURTHER SIMILARLY COMMITTED OFFENSES AFTER DEFENDANT'S ARREST]. EVIDENCE OF ASSAULT AND AGG. ASSAULT COMMITTED BY BROWN MUST SHOW A CRIME OR BAD ACT THAT IS CONNECTED TO HIM [MORENO V. STATE, 858 S.W. 2d 453, 463 (TEX. CRIM. APP. 1993), CERT. DENIED, 510 U.S. 966 (1993)]. IT IS ERROR TO ADMIT EVIDENCE OF ANOTHER OFFENSE IF BROWN IS NOT SHOWN TO BE THE GUILTY PARTY OF THE OFFENSE [TIPPINS V. STATE, 530 S.W. 2d 110, 111 (TEX. CRIM. APP. 1975); SEE THOMPSON V. STATE, 615 S.W. 2d 760, 761 (TEX. CRIM. APP. 1981) REVERSED BECAUSE EVIDENCE INSUFFICIENT TO SHOW DEFENDANT'S GUILT OF EXTRANEOUS OFFENSE.

IT AFFECTS APPLICATION OF "BEYOND A REASONABLE DOUBT" STANDARD ONLY IF, UNDER FACTS OF CASE, THERE IS NO RATIONAL WAY TRIER COULD MAKE CONNECTION PERMITTED BY THE RETALIATION STATUTORY ELEMENTS [JACKSON V. VIRGINIA, 443 U.S. 307, 319 (1979)] SINCE IT IS ONLY IN THIS SITUATION THAT THERE IS A RISK THAT BROWN IS IN CUSTODY IN VIOLATION OF THE CONSTITUTION FROM THE CASE-IN-CHIEF IMPROPER APPLICATION IN APPLYING LAW TO FACT AND IN DOING SO MADE A ERRONEOUS LEGAL AND FACTUAL

(7)

DETERMINATION, [SEE ULSTER COUNTY V. ALLEN 442 U.S. 140, 99 S.Ct. 2213, L.Ed. 777 (1979)], IN DECIDING WHAT TYPE OF "HARM" OR "UNLAWFUL ACT" ARE INVOLVED IN A CASE, THE CASE CHARGING INSTRUMENT WILL GENERALLY BE CONTROLLING, ALTHOUGH THEIR INTERPRETATION MAY REQUIRE RECOURSE TO THE STATUTE AND THE CASE DECIDED UNDER IT. Id. AT, 2215. THE STATUTORY RETALIATION ARBITRARY RESTED ENTIRELY ON ITS VIEW OF THE FAIRNESS OF APPLYING THE RETALIATION IN HYPOTHETICAL SITUATIONS — SITUATIONS, INDEED, IN WHICH IT IS IMPROBALE THAT A TRIER WOULD RETURN A CONVICTION, OR THAT A PROSECUTION WOULD EVER BE INSTITUTED. IT IS OFTEN NECESSARY FOR THE TRIER OF FACT TO DETERMINE THE EXISTENCE OF AN ELEMENT OF THE CRIME — THAT IS, AN ULTIMATE OR "ELEMENTAL" FACT — FROM THE EXISTENCE OF ONE OR MORE "EVIDENTIARY" OR "BASIC" FACT. Id, ULSTER V. ALLEN, AT, 442 U.S. 155, 2224.

IF ONE CLAIM RELIES ON STATE LAW WHILE THE OTHER RELIES ON FEDERAL LAW, EVEN IF STATE PROVISION ARE SIMILAR OR IDENTICAL [ANDERSON V. HARLESS 459 U.S. 4, 6, 103 S.Ct 276, 74 L.Ed. 2d 3 (1982) PER CURIAM, STATE CLAIM OF INFRINGMENT OF RIGHT OF PROOF BEYOND REASONABLE DOUBT OF CRIMINAL CHARGES DOES NOT EXHAUST FEDERAL REASONABLE DOUBT CLAIM], IT SHOULD BE REVIEWED UNDER THE FUNDAMENTAL FAIRNESS GUIDELINES. IN TEMPLE V. STATE, 14-08-00074 CR (TEX.APP-HOUSTON [14th DIST.] 2011 NO PET.), "THE COURT HELD," BROOK DID NOT DO AWAY WITH FACTUAL-SUFFICIENCY REVIEW; IT SIMPLY RECOGNIZED THAT WHEN THE BURDEN OF PROOF IS BEYOND A REASONABLE DOUBT, FACTUAL AND LEGAL SUFFICIENCY ARE ONE AND THE SAME."

(8)

BROOK DOES NOT ALTER CONSTITUTIONAL AUTHORITY OF THE INTERMEDIATE COURTS OF APPEAL TO EVALUATE AND RULE ON QUESTION OF FACT. ~~BROOK~~ BROOK v. STATE 323 S.W. 3d (TEX.CR. APP. 2010).

THE C.O.A. DID ERR IN ITS OPINION BECAUSE THE CHARGING ALLEGATIONS ARE HELD SO AMBIGUOUS THAT NO OFFENSE IS CHARGED [SMITH v. STATE, 435 S.W. 2d 526, 527 (TEX.CR.APP. 1969)]; AND C.O.A. IMPROPERLY MEASURED THE SUFFICIENCY OF EVIDENCE TO THE FUNDAMENTAL DEFECTIVE CHARGE THAT WAS GIVEN, WHICH THE EVIDENCE DIDN'T CONFORM TO THE INSTRUCTION GIVEN, IT MADE IT INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE VERDICT OF GUILTY. BOOZER v. STATE 717 S.W. 2d 608 (TEX.CR. APP. 1989). WHEN OFFENSE STATUTE DEFINES MANNER OR MEANS OF COMMISSION OF OFFENSE IN SEVERAL ALTERNATIVE WAYS, INDICTMENT WILL FAIL FOR LACK OF SPECIFICITY IF IT NEGLECTS TO IDENTIFY WHICH OF STATUTORY MEANS IT ADDRESSES. VERNON'S ANN. TEX. CONST. ART. 1, §10; VERNON'S ANN.TEX. C.C.P. ARTS. 21.02 (7), 21.03, 21.04; U.S. CONST. AMEND VI AND XIV.

MOREOVER, THREE CREDITABLE WITNESSES, SHERIFF DEPUTIES, TESTIMONY IS SUFFICIENT TO SUPPORT LEGAL-FACTUAL INSUFFICIENCY WHEN THEY FOUND NO THREATS OF [HARM] WERE MADE TO CONSTITUTE RETALIATION, BY SAYING THEY HEARD NO ACTS OF VIOLENCE SPOKEN. A ACTUAL INNOCENCE CLAIM WHICH REQUIRES A SHOWING THAT A FINDING OF GUILT WOULD LIKELY NOT HAVE HAPPENED ABSENT A CONSTITUTIONAL VIOLATION. SEE CALDERON v. THOMPSON, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed. 2d 728 (1998).

(9)

## II. DID THE APPELLATE COURT ERR WHEN IT RULED APPELLANT'S MOTION TO QUASH INDICTMENT WAS ONLY AN ORAL MOTION WHEN A PRO SE WRITTEN MOTION HAD ALSO BEEN FILED?

### STATEMENT OF FACTS

IN BROWN'S SECOND ISSUE FOR REVIEW, C.O.A. CONCLUDED THAT DISTRICT COURT DID NOT ERR IN DENYING BROWN'S ORAL MOTION TO QUASH BECAUSE HE WAS ACTING PRO SE WHILE HE WAS REPRESENTED BY COUNSEL WHEN HE MADE HIS REQUEST, ALSO CITING TEX. C. CRIM. PRO. ART. 27.10 SAYING MOTION TO QUASH MUST BE MADE IN WRITING, AND THAT MOTION TO QUASH WAS UNTIMELY AFTER TRIAL HAD OCCURED PRESERVING NOTHING FOR REVIEW. THE C.O.A., CITING CODE CRIM. PROC. ART. 1.14, ADDITIONALLY SAYS THAT BROWN HAS FAILED TO PRESERVE ANY ERROR REGARDING THE TWO PRO SE MOTIONS FILED BEFORE TRIAL BECAUSE HE'S NOT ENTITLED TO HYBRID REPRESENTATION AND THAT BROWN FAILED TO OBTAIN A RULING FROM THE DISTRICT COURT OR THAT THE DISTRICT COURT EXPRESSLY REFUSED TO RULE ON THE MOTIONS. IN THE C.O.A. OPINION THE INDICTMENT GENERALLY TRACKED THE LANGUAGE OF THE APPLICABLE STATUTE... SAYING AN INDICTMENT TRACKING THE LANGUAGE OF A STATUTE WILL SATISFY CONSTITUTIONAL AND STATUTORY REQUIREMENTS.

### SUMMARY ARGUMENT

BROWN HAS STANDING TO CHALLENGE CONSTITUTIONALITY OF A INDICTMENT ONLY INSOFAR AS IT HAS ADVERSE IMPACT ON HIS OWN RIGHTS; AND, IN CRIMINAL CASES, ULTIMATE TEST OF ANY EVIDENTIARY DEVICE'S CONSTITUTIONAL VALIDITY IN A GIVEN CASE IS WHETHER DEVICE UNDERMINES FACT FINDER'S RESPONSIBILITY AT TRIAL, BASED ON EVIDENCE ADDUCED BY THE STATE, TO FIND

(10)

THE ULTIMATE FACTS BEYOND A REASONABLE DOUBT. THIS PDR PRESENTS FUNDAMENTAL QUESTIONS :(1) WHETHER THE TRIAL COURT HAD JURISDICTION TO ENTERTAIN DEFENDANTS CLAIM THAT THE RETALIATION INDICTMENT WAS ERRONEOUS AND UNCONSTITUTIONAL (2) WHETHER THE APPLICATION OF THE RETALIATION IN THIS CASE WAS UNCONSTITUTIONAL (3) WHETHER IT WAS PROPER FOR THE TRIAL COURT TO DECIDE THE FACIAL CONSTITIONALITY ISSUE. BROWN CONTENDS THAT THERE ISN'T A FAIR READING OF THE STATUTE TEX. PEN. C. § 36.06(a) TO SQUARELY BRING WITHIN THE PROHIBITION OF § 36.06 BECAUSE THE INDICTMENT OMITS THE STATUTORY ELEMENT "HARM", ELEMENTS WHICH ARE NECESSARY TO AUTHORIZE CONVICTION, NOR DOES THE INDICTMENT ALLEGE THE NECESSARY FACTS TO BE PROVED. BROWN FURTHER ARGUES THAT THE ALLEGED OFFENSE IS NOT CRIMINAL.

## ARGUMENT

BROWN GUIDES THIS COURTS CONSIDERATION PURSUANT (T.R.A.P) RULE 66.3 AND CONTEND THAT THE C.O.A. OPINION IS UNCONSTITUTIONALLY APPLIED. TO HIM REGARDING HIS TWO PRO SE MOTION'S TO QUASH. WHEN MEASURING THE CHARGE THAT WAS GIVEN IN THE INDICTMENT WHICH OMITTED THE STATUTORY ELEMENT [HARM" PEN. C.§1.07(a)(25)] AND ADDED ABSTRACT EXTRANEOUS OFFENSES ["ASSAULT" PEN. C. § 22.01 AND "AGG. ASSAULT" PEN. C. § 22.02] AS THE UNLAWFUL ACT, AND THEN WHEN YOU TRACK THE LANGUAGE OF THE STATUTORY RETALIATION SET IN PEN. C. § 36.06, IT CLEARLY DOESN'T MATCH UP, UNDERMINING THE FUNDAMENTAL FAIRNESS PROCEDURES AND VIOLATING THE U.S. CONST. AMEND. VI AND XIV; TEX. CONST. ART. 1 § 19. THE CHARGING INSTRUMENT MUST PROVIDE

(11)

ON ITS FACE SUFFICIENT INFORMATION FOR DEFENDANT TO PREPARE DEFENSE. SWABADO V. STATE, 597 S.W. 2d 361, 364 (TEX. CR. APP. 1980). WHEN OFFENSE STATUTE DEFINE MANNER OR MEANS OF COMMISSION OF OFFENSE IN SEVERAL ALTERNATIVE WAYS, INDICTMENT WILL FAIL FOR LACK OF SPECIFICITY IF IT NEGLECTS TO IDENTIFY WHICH OF THE STATUTE IT MEANS TO ADDRESS. TEX. CONST. ART. 1, §10; THE LANGUAGE OF THE STATUTE IS ITSELF NOT COMPLETELY DESCRIPTIVE OF THE OFFENSE, THE INFORMATION IS INSUFFICIENT FOR ITS FAILURE TO FOLLOW THE STATUTORY LANGUAGE. IN STATE V. EDMOND, 933 S.W. 120, 128 (TEX. CRIM. APP 1996) WHEN A STATUTE DEFINES THE MANNER OR MEANS OF COMMITTING AN OFFENSE, AN INDICTMENT BASED UPON THAT STATUTE NEED NOT ALLEGE ANYTHING BEYOND THAT DEFINITION. EDMOND DOES NOT ESTABLISH A BRIGHT-LINE RULE", BECAUSE STATUTORY DEFINITION PROVIDED IN THIS STATUTE "IS HARDLY A DEFINITION; IT IS MORE LIKE A CHARACTERIZATION OR GENERALIZATION." THE LEGISTLATURE COULD NOT HAVE INTENDED TO CONSTRUCT A STATUTE THAT WAS SO BROAD IN ITS PROHIBITIONS. IN ANALYZING CONSTITUTIONAL VALIDITY OF MANDATORY AND JURISDICTIONAL NATURE OF RETALIATION, WHICH MAY AFFECT NOT ONLY STRENGTH OF THE STATE'S BEYOND A "REASONABLE DOUBT" BURDEN ~~BURDEN~~ BUT ALSO THE PLACEMENT OF THAT BURDEN. THE TRIAL COURT ABUSED ITS DISCRETION AND DISREGARDED JURISDICTION COMPLETELY WHEN THE CHARGE AUTHORIZE CONVICTION FOR CONDUCT WHICH IS NOT AN OFFENSE [DOWDEN V. STATE, 537 S.W. 2d 5 (TEX. CR. APP. 1976)] ~~————————~~ THIS KIND OF FUNDAMENTAL ERROR IS DEFECTIVE NOT ONLY BECAUSE IT ENLARGES ON THE INDICTMENT, BUT ALSO BECAUSE IT AUTHORIZES CONVICTION FOR NON-CRIMINAL CONDUCT. SEE AM. BD. OF PSYCHIATRY &

(12)

NEUROLOGY V. JOHNSON - POWELL, 129 F.3d 1,3 (1st CIR. 1997) WHEN LAW INCORRECTLY IS APPLIED TO FACTS.

BROWN FILED TWO PRO SE MOTIONS TO QUASH IN WRITING AND REQUESTED A RULING AT ARRAIGNMENT ON THEM, THE TRIAL COURT PRONOUNCED THAT IF ALL THE ELEMENTS ARE NOT MET YOU'LL BE FOUND NOT GUILTY, EXPRESSLY ~~NOT~~ REFUSING TO MAKE A RULING ON THE MOTION. SEE PEDRERO V. WAINWRIGHT, 590 F.2d 1383, 1390 (5th CIR. [FLA.] 1979) DISCOURAGING AND CONFUSING ACTION BY TRIAL COURT, EVEN THOUGH DEFENDANT DID EVERYTHING POSSIBLE TO COMPLY WITH PROCEDURAL RULE. THE C.O.A. SAYS BROWN WAS ACTING PRO SE WHILE HE WAS REPRESENTED BY COUNSEL AND THAT THE DISTRICT COURT HAD NO DUTY TO RULE ON THE REQUEST, HOWEVER, C.O.A. CONFLICTS WITH IT'S OWN OPINION SAYING BROWN SHOULD HAVE SAID SOMETHING BEFORE TRIAL HAD BEGAN. BROWN PRESERVED ERROR BY OBJECTING TO THE FUNDAMENTAL DEFECTS IN THE INDICTMENT SUFFICIENT TO ENABLE TRIAL COURT TO COMPLY WITH THE REQUEST, TEX. R. EVID. 201 (b)(c)(d)(e). IN TEX. CONST. ART. 1 § 10 THE ACCUSED HAS THE RIGHT TO BE HEARD BY HIMSELF OR COUNSEL IN CRIMINAL PROSECUTION, THEREBY, TEX. CODE CRIM. PROC. ART. 1.14(b) WAS SATISFIED AND WAS NOT VOIDABLE BY HYBRID REPRESENTATION AND THE INDICTMENT WAS VOIDABLE BY THE REQUIREMENT OF TEX. C. CRIM. PROC. ART. 21.02(i) THROUGH MOTION TO QUASH. BROWN IS ALSO PROTECTED BY THE 6th AND 14th AMENDMENT TO THE U.S. CONSTITUTION. THE DENIAL OF ANY JUDICIAL CONSIDERATION OF THE CONSTITUTIONAL CLAIM LIE OUTSIDE OF BROWN BECAUSE OF ERROR MADE BY HIS COUNSEL [(RODGERS V. STATE, 180 S.W. 3d 716, 724 (TEX. APP., WACO 2005, NO PET. H.)] BECAUSE THE FAILURE OF TRIAL COUNSEL TO

(13)

REQUEST A REASONABLE DOUBT INSTRUCTION WHEN EXTRANEOUS OFFENSE EVIDENCE IS INTRODUCED MAY RESULT IN A HOLDING THAT ANY ERROR HAS BEEN WAIVED. THE ERROR IS SO EGREGIOUSLY HARMFUL THAT BROWN WAS DENIED A FAIR AND IMPARTIAL TRIAL [HUIZAR V. STATE, 12 S.W. 3d 479, 483 (TEX. CRIM. APP. 2000); CORMIER V. STATE, 955 S.W. 2d 161, 163-164 (TEX. APP., AUSTIN 1997, NO WRIT)]. DUPLICITY, SURPLUSAGE, FATAL VARIACE, REPUGNANCE, MISJOINDER, OMISSION OF ESSENTIAL ELEMENTS, AND EXTRANEOUS OFFENSES RAISE CONSTITUTIONAL ERROR WHEN PLACED IN A SINGLE INDICTMENT WHICH IMPAIRED THE TRUTH FINDING FUNCTIONS OF THE TRIAL JACKSON V. VIRGINIA, 443 U.S. 307, 319 (1979). BROWN COULD IMAGINE NO REASONABLE TRIAL STRATEGY FOR [TRIAL COUNSEL] REMAINING SILENT WHEN [HE] WAS DILIGENTLY TRYING TO GET JUDICIAL NOTICE. BROWN DID [N]OT FAIL TO PRESERVE ERROR, IT WAS COUNSEL'S INCOMPETENT PERFORMANCE THAT FAILED TO ASSIST HIM. PIVOTING AROUND THE EXTRANEOUS ACTS OF ASSAULT AND AGG. ASSAULT, PIKE V. STATE SUPRA, WHICH THE GUILTY VERDICT STANDS, WAS NOT SIMILAR TO THE ALLEGED OFFENSE AT THE GUILT/INNOCENCE PHASE DEMONSTRATING A PREJUDICE TO BROWN BECAUSE HE OBJECTED [DELGADO V. STATE 235 S.W. 3d 244, 252-253 (TEX. CR. APP. 2007)], AND REQUIRE A REVERSAL BECAUSE TRIAL COURT WAS ALLOWED TO CONVICT ON THE ASSUMPTION THAT HE WAS ACTING IN COMFORMITY WITH A CRIMINAL CHARACTER [ABDNOR V. STATE, 871 S.W. 2d 726, 738 (TEX. CR. APP. 1994)].

THIS COURT IS GUIDED HERE BY OSBORNE V. OHIO, 495 U.S. 103, 122-125, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990). OSBORNE APPLIED THE GENERAL PRINCIPLE THAT AN OBJECTION AMPLE AND TIMELY

(14)

TO BRING AN ALLEGED FEDERAL ERROR TO THE ATTENTION OF THE TRIAL COURT ENABLING IT TO TAKE APPROPRIATE CORRECTIVE ACTION, SATISFIES LEGITIMATE STATE INTEREST AND THEREFORE SUFFICES TO PRESERVE THE CLAIM FOR FEDERAL REVIEW. DEFENSES AND OBJECTIONS BASED ON DEFECTS IN THE INSTITUTION OF THE PROSECUTION FROM THE INDICTMENT FAIL TO SHOW JURISDICTION IN THE TRIAL COURT. CHAMBERS V. MISSISSIPPI, 410 U.S. 284, 93 S.Ct 1038 (1973).

MOREOVER, BY TRIAL COURT REFUSING TO MAKE A RULING ON BROWN'S PRO SE MOTIONS AND HIS COUNSEL'S DEFICIENCIES BY NOT ASSISTING HIM CHALLENGE THE ERRONEOUS INDICTMENT, IT SIGNIFICANTLY CURTAILED HIS ABILITY TO PREPARE A DEFENSE. SEE BRADY V. MARYLAND 373 U.S. 83, 87 (1963). THAT RIGHT IS UNQUESTIONABLY PROTECTED BY DUE PROCESS. SEE UNITED STATES V. BAGLEY 473 U.S. 667 (1985)

IN BRADY V. MARYLAND, 373 U.S., AT 87 ("THE PRINCIPLE ... IS NOT PUNISHMENT OF SOCIETY FOR MISDEEDS OF A PROSECUTOR BUT AVOIDANCE OF AN UNFAIR TRIAL TO THE ACCUSED. SOCIETY WIN NOT ONLY WHEN THE GUILTY ARE CONVICTED BUT WHEN CRIMINAL TRIALS ARE FAIR; OUR SYSTEM OF THE ADMINISTRATION OF JUSTICE SUFFERS WHEN ANY ACCUSED IS TREATED UNFAIRLY"); UNITED STATES V. BAGLEY, 473 U.S., AT 675 ("THE BRADY RULE IS BASED ON THE REQUIREMENT OF DUE PROCESS. IT'S PURPOSE IS ... TO ENSURE THAT A MISCARRIAGE OF JUSTICE DOES NOT OCCUR")

WHEN RULE OF LAW IS ONE WHICH WOULD AFFECT PERSON'S CONDUCT PRIOR TO INSTITUTION OF LITIGATION AND HAS NO DESIGN TO MANAGE ONGOING LITIGATION IT IS A RULE OF SUBSTANCE RATHER THAN PROCEDURE, McCOLLUM AVIATION INC. V. CRIM ASSOCIATES, INC., S.D. FLA. 1977, 438 F. SUPP. 245 F. CIV. PRO. 39. SUPREME COURT MAY USE ITS SUPERVISORY AUTHORITY TO INVALIDATE LOCAL RULES THAT WERE

(15)

PROMULGATED IN VIOLATION OF ACT OF CONGRESS. HOLLINGSWORTH V. PERRY, U.S. 2010, 130 S.Ct. 705, 175 L.Ed. 2d 657. THE TEST FOR WHETHER A RULE OF PROCEDURE PROMULGATED BY THE SUPREME COURT IS VALID UNDER THE RULES ENABLING ACT, WHICH AUTHORIZES THE SUPREME COURT TO PROMULGATE RULES OF PROCEDURE SUBJECT TO CONGRESS'S REVIEW, BUT WITH THE LIMITATION THAT THOSE RULES "SHALL NOT ABRIDGE, ENLARGE OR MODIFY ANY SUBSTANTIVE RIGHT," IS NOT WHETHER THE RULE AFFECTS A LITIGANT'S SUBSTANTIVE RIGHTS, SINCE MOST PROCEDURAL RULES DO; WHAT MATTERS IS WHAT THE RULE ITSELF REGULATES, AND IF IT GOVERNS ONLY THE MANNER AND MEANS BY WHICH THE LITIGANTS' RIGHTS ARE ENFORCED, IT IS VALID, BUT IF IT ALTER THE RULES OF DECISION BY WHICH THE COURT WILL ADJUDICATE THOSE RIGHTS, IT IS NOT. SHADY GROVE ORTHOPEDIC ASSOCIATES, P.A. V. ALLSTATE INS. CO., U.S. 2010, 130 S.Ct. 1431, 176 L.Ed. 2d 311, ON REMAND 380 FED. APPX. 96, 2010 WL 2303325. THERE IS A TWO-STEP FRAMWORK FOR RESOLVING AN ALLEGED CONFLICT BETWEEN RULES ADOPTED UNDER THE RULES ENABLING ACT AND STATE LAW: THE FIRST STEP IS TO DETERMINE WHETHER THE FEDERAL RULE AND STATE LAW CONFLICT AND, IF SO, THE SECOND STEP IS TO DECIDE WHETHER APPLICATION OF FEDERAL RULE REPRESENTS A VALID EXERCISE OF THE RULEMAKING AUTHORITY UNDER THE RULES ENABLING ACT, WHICH REQUIRES THAT FEDERAL RULES NOT ABRIDGE, ENLARGE OR MODIFY ANY SUBSTANTIVE RIGHT. JAMES RIVER INS. CO. V. RAPID FUNDING, LLC, C.A. 10 (COLO) 2011, 658 F.3d 1207. WHETHER THE PETITIONER'S EFFORTS TO ABIDE BY STATE RULE WERE SUFFICIENT IS A QUESTION OF FEDERAL LAW, NOT STATE LAW. JAMES V. KENTUCKY, 466 U.S. 341, 351, 104 S.Ct. 1830, 80 L.Ed. 2d 346 (1984).

(16)

MOREOVER, ANY FAILURE TO OBJECT TO THE SUBSTANTIVE DEFECTIVE INDICTMENT SHOULD BE IMPUTED TO TRIAL COUNSEL'S DEFICIENCIES, SINCE THE COURTS BELOW DISREGARDED BROWNS PRO SE MOTIONS BECAUSE HE WAS REPRESENTED BY COUNSEL AND NO[T] ON THE MERITS PIVOTING AROUND [COOK v. STATE, 902 S.W. 2d 471, 475-76 (TEX. CRIM. APP. 1995)] TO CONSTITUTE AN INDICTMENT, WHICH THE CHARGING INSTRUMENT MUST CHARGE: (1) A PERSON AND (2) THE COMMISSION OF AN OFFENSE. ASSAULT PEN. C. § 22.01 AND AGG. ASSAULT PEN. C. § 22.02 FAIL TO CHARGE THE COMMISSION OF THE OFFENSE RETALIATION PEN. C. § 36.06, THEREFORE, IT IS NOT AN INDICTMENT AT ALL AND DOES NOT VEST ANY TRIAL COURT WITH JURISDICTION, FURTHERMORE, BECAUSE A VALID INDICTMENT IS ESSENTIAL FOR JURISDICTION, IT IS NOT SUBJECT TO WAIVER. FUNDAMENTALLY FAIR TRIALS ARE ALSO UNWAIVEABLE UNDER THE 6th AND 14th AMENDMENT. IT IS REASONABLE TO EXPECT DEFENSE ATTORNEY'S TO KNOW THE BROAD OUTLINES OF CONSTITUTIONAL LAW AS IT APPLIES TO THE CONDUCT OF ATTORNEY'S. BECAUSE BROWN WAS CONVICTED OF THREE SEPARATED OFFENSES IN ONE COUNT, "RETALIATION," "ASSAULT," AND "AGG. ASSAULT," WITHOUT EITHER OF THEM CHARGING THE COMMISSION OF THE OFFENSE, IT IS UNFAIR TO NOT GIVE HIM NOTICE TO DEFEND HIMSELF.

## III. DID THE APPELLATE COURT ERR WHEN IT OVERRULED APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL?

## STATEMENT OF FACTS

IN BROWNS THIRD ISSUE ON APPEAL, THE C.O.A. OVERRULED BROWNS FINAL ISSUE SAYING COUNSEL'S REASONS FOR FAILING

(17)

TO DO SOMETHING DO NOT APPEAR IN THE RECORD AND BEFORE COUNSEL REPRESENTATION IS DEEMED INEFFECTIVE, COUNSEL SHOULD BE AFFORDED THE OPPORTUNITY TO EXPLAIN THEIR ACTIONS. IT FURTHER ASSERTS NEITHER COUNSEL NOR THE STATE HAVE BEEN GIVEN OPPORTUNITY TO RESPOND TO THE CLAIMS. THE C.O.A OPINION ALSO SAYS BROWN DOES NOT IDENTIFY ANY PRETRIAL MOTIONS THAT SHOULD HAVE BEEN FILED. IT IS C.O.A.'s OPINION THAT ATTORNEY INTRODUCED EVIDENCE REGARDING BROWN'S MOTHER AS A MATERIAL WITNESS, THROUGH QUESTIONING OF DEPUTIES AND BROWN. IT ALSO SAYS THAT DEFICIENCIES WERE DISCUSSED DURING THE TRIAL AND ARE APPARENT WHEN VIEWED, "PERTAINING TO THE EXPERT WITNESS WHOM PRODUCED THE VIDEO." THE C.O.A. TOOK NOTICE OF BROWN'S PRO SE MOTION(S) FOR NEW TRIAL AND NOTICE OF APPEAL ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL, BUT SAYS HE HASN'T OVERCOME THE PRESUMPTION THAT COUNSEL PROFESSIONAL ASSISTANCE WAS UNREASONABLE. BROWN REFUSE TO PARTICIPATE IN THE FILED MOTION FOR NEW TRIAL SCHEDULED BY THE DISTRICT COURT AND TRIAL COURT ATTORNEY FOR TIME REDUCTION. IT ALSO CLAIMS TRIAL COUNSEL HAD A CLOSING ARGUMENT.

## SUMMARY ARGUMENT

PROCEDURAL RULES DO NOT GENERALLY INVOLVE AN ASSERTION BY THE DEFENDANT HIMSELF, RATHER, THE DECISION TO ASSERT OR NOT TO ASSERT CONSTITUTIONAL RIGHTS OR CONSTITUTIONAL OBJECTION ARE ENTRUSTED TO THE DEFENDANTS ATTORNEY. THE ATTORNEY HAS THE ULTIMATE RESPONSIBILITY OF DECIDING IF AND WHEN TO OBJECT, WHICH WITNESS, IF ANY, TO CALL, AND WHAT DEFENSES TO DEVELOP. COUNSEL'S FAILURES WERE NOT THE RESULT

(18)

OF "TRIAL STRATEGY" BUT INSTEAD, AN IGNORANCE OF CRIMINAL PROCEDURE AND HIS DUTY TO ZEALOUSLY DEFEND. BROWN SUFFERED THE UNFAIR PREJUDICE AND HARM OF REPEATED FAILURES. THE CUMULATIVE EFFECT OF ENOUGH OF THESE ERRORS UNDERMINED THE CONCEPT OF A FAIR TRIAL AND WORKED TO HIS ACTUAL AND SUBSTANTIAL DISADVANTAGE RATHER THAN MERELY CREATING A POSSIBILITY OF PREJUDICE. IT IS NOT THE GRAVITY OF THE ATTORNEY'S ERROR THAT MATTERS, BUT THE FACT THAT THE ERROR CONSTITUTES A VIOLATION OF THE PETITIONER'S RIGHT TO COUNSEL. WITH FUNDAMENTAL CONSTITUTIONAL RIGHTS AT STAKE, NO FICTIONAL RELATIONSHIP OF PRINCIPLE-AGENT OR THE LIKE CAN JUSTIFY HOLDING BROWN ACCOUNTABLE FOR THE NAKED ERRORS OF HIS ATTORNEY. IN ALL, COUNSEL FAILED TO DEMONSTRATE EFFECTIVE ASSISTANCE WITHIN REASONABLE PROFFESSIONAL NORMS.

## ARGUMENT

PURSUANT INEFFECTIVE ASSISTANCE BY TRIAL COURT COUNSEL CITING STRICKLAND V. WASHINGTON 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984) SHOWING (1) COUNSEL'S PERFORMANCE WAS ~~DEFFECTIVE~~ DEFICIENT WHEN COUNSEL'S FAILURE TO EVALUATE PROPERLY FACTS GIVING RISE TO A CONSTITUTIONAL CLAIM OR HIS FAILURE PROPERLY TO INFORM HIMSELF OF FACTS THAT WOULD HAVE SHOWN THE EXISTENCE OF A CONSTITUTIONAL CLAIM, MIGHT IN PARTICULAR FACT SITUATIONS MEET THE PROOF [OF INCOMPETENT COUNSEL] TOLLETT V. HENDERSON 411 U.S. 298, 327 (1973), AT 266-267. THERE IS NOTHING UNREASONABLE, HOWEVER, IN ADHERING TO THE PROPOSITION THAT IT IS THE RESPONSIBILITY OF A LAWYER WHO TAKE ON THE DEFENSE OF ANOTHER TO BE AWARE OF HIS

(19)

CLIENTS BASIC LEGAL FORUM IN WHICH HE PRACTICES HIS PROFESSION. IMPORTANT RIGHTS HUNG IN THE BALANCE, AS MENTIONED IN BROWN'S SECOND ISSUE IN THIS PDR PERTAINING TO HIS MOTION TO QUASH INDICTMENT WHERE HE REQUEST A RULING ON THEM AT ARRAIGNMENT BEFORE HE PLEAD [A]ND WHERE COUNSEL FAILED TO ASSIST BROWN ON HIS REQUEST. AN ATTORNEY HAS A DUTY TO EXERT HIS BEST EFFORT TO ENSURE THAT HIS CLIENT'S DECISIONS ARE BASE ON CORRECT INFORMATION AS TO THE APPLICABLE LAW. AN ATTORNEY FAILURE TO GIVE COMPETENT ADVISE TO A DEFENDANT WHICH WOULD PROMOTE AN UNDERSTANDING OF THE LAW IN RELATION TO THE FACTS AND WHICH WOULD PERMIT AN INFORMED AND CONSCIOUS CHOICE IS ERROR. SEE RODRIGUEZ V. STATE, 340 S.W. 2d 61 (TEX. CR. APP. 1960); CARUSO V. ZELINSKY 689 F2d 438 (3rd CIR. 1982). TO GIVE GREAT DEFERENCE TO BROWN'S ATTORNEY PERFORMANCE AND FIND INEFFECTIVE ASSISTANCE ONLY IN THIS SITUATION WHERE THE CHALLENGED CONDUCT IS SO OUTRAGEOUS THAT NO COMPETENT ATTORNEY, WOULD HAVE FAILED TO INVESTIGATE HIS CLIEN'S POTENTIAL FUNDAMENTAL CLAIM THROUGH A MOTION TO QUASH. SEE GARCIA V. STATE, 57 S.W. 3d 436, 440 (TEX. CRIM. APP. 2001). IT HAS BEEN HELD THAT, IN THE ABSENCE OF ANY TRIAL STRATEGY FOR THE FAILURE TO REQUEST THE EXTRANEOUS OFFENSE INSTRUCTIONS, COUNSEL'S REPRESENTATION FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS REQUIRING A REVERSAL ON THE GROUND OF INSUFFICIENT EVIDENCE [EX PARTE VARELAS, 45 S.W. 3d 627, 630 (TEX. CR. APP. 2001). THIS IS ESPECIALLY TRUE WHEN BROWN REJECTED A PLEA BARGAIN BASED ON ERRONEOUS LEGAL ADVICE FROM COUNSEL AND WAS CONVICTED AT TRIAL AND RECIEVED A MUCH GREATER SENTENCE THAN

(20)

OFFERED IN THE PLEA BARGAIN. ADDITIONAL JAIL TIME HAS A SIXTH AMENDMENT SIGNIFICANCE. SEE GLOVER V. UNITED STATES, 531 U.S. 198, 203-204, 121 S.Ct. 696, 148 L.Ed. 2d 604. FURTHER, BROWN SUFFERED PREJUDICE RATHER THAN A WINDFALL BASED ON THE LIKELIHOOD THAT THE OUTCOME WOULD HAVE BEEN DIFFERENT, SINCE BROWN SOUGHT RELIEF BASED ON A FAILURE TO MEET A VALID LEGAL STANDARD AND THE APPLICATION OF AN INCORRECT LEGAL PRINCIPAL. BROWN'S ATTORNEY EXHIBITED A REMARKABLE LACK OF FAMILIARITY WITH OR BASIC MISUNDERSTANDING OF CONTROLLING PRINCIPAL OF CONSTITUTIONAL LAW, AS A RESULT OF HIS INEPITUDE AND NOT BECAUSE OF STRATEGIC REASON. BROWN WAS HARMED AT THE PLEA BARGAIN LEVEL AND WASN'T MAKING A DECISION TO PLEAD OR PROCEDE TO TRIAL. SEE THE NINTH CIRCUIT UNITED STATES COURT OF APPEAL MOORE V. CZERNIAK, NO. 04-15713, JULY 28, 2009. BROWN OBJECTED TO FUNDAMENTAL DEFECTS IN THE INDICTMENT PRO SE TO PRESERVE ERROR BEFORE HE PROCEDED A NOT GUILTY PLEA TO THE EXTRANEOUS OFFENSES OF "ASSAULT AND AGG. ASSAULT." WHEN BROWN'S COUNSEL FAILED TO FILE A MOTION TO QUASH OR ADOPT HIS PRO SE MOTIONS, IT OPEN THE DOOR TO EXTRANEOUS. OFFENSES, CAUSED BROWN TO LOSE THE PLEA BARGAIN BENEFITS, AND FAILED TO PRESERVE ERROR ON APPEAL. SEE HILL V. LOCKHART, 474 U.S. 52 (1985). THE STANDARD FOR DETERMINING PREJUDICE IN INEFFECTIVENESS CASES DURING PLEA BARGAIN PROCESS WAS ESTABLISHED IN THE U.S. SUPREME COURT MISSOURI V. FRYE, 132 S.Ct. 1399 (2012) AND LAFLER V. COOPER, 132 S.Ct. 1376 (2012). EX PARTE LEMKE, 13 SW 3d 796 (TEX. CR. APP. 2000) HELD THAT AN ACCUSED SUFFERS PREJUDICE WHEN HIS LAWYER'S DEFICIENT PERFORMANCE DEPRIVED HIM THE

(21)

OPPORTUNITY TO ACCEPT A PLEA BARGAIN THAT HE MAY HAVE ACCEPTED IF HE HAD SUFFICIENT INFORMATION FROM COUNSEL ON WHICH TO BASE HIS DECISION. BROWN'S ATTORNEY GROSS NEGLEGENCE IS NOT LIMITED TO NOT FILING A MOTION TO QUASH, [B]UT HIS FAILURE TO FILE ANY PRE-TRIAL MOTION(S) IN BROWNS FAVOR. IN FACT ATTORNEY FILED A MOTION TO HAVE BROWN EXAMINED BY A PSYCHIATRIST WHICH DIAGNOSED HIM WITH ANTI SOCIAL BEHAVIORS AND A MOTION FOR THE APPOINTMENT OF AN INVESTIGATOR WHOM PRODUCED NO EVIDENCE. BROWN FILED MANY PRO SE PRE-TRIAL MOTIONS: MOTION FOR DISCOVERY -- MOTION FOR EXAMINING -- MOTION FOR REDUCTION OF BOND -- MOTION TO SUPPRESS EVIDENCE -- MOTION FOR SPEEDY TRIAL; AS STATED IN HIS STATEMENT OF FACTS IN HIS APPELLANT'S BRIEF. CLAIM OF LEGAL SUBSTANCE SHOULD NOT BE FORFEITED BECAUSE OF FAILURE TO STATE THEM WITH TECHNICAL PRECISION [BROWN V. ALLEN, 344 U.S. 443, 502, 97 L.Ed. 469, 73 S.Ct. 397 (1953)]. WOOD V. ALLEN 130 S.Ct. 841 (2010) TRIAL COUNSEL HAD NO CLUE AS TO HOW ARE WHERE TO BEGAN TO DEFEND AND SUCH DEFICIENT PERFORMANCE WAS PRESUDICE. BROOK V. TEXAS, 381 F.2d 619 (5th CIR. 1967) COUNSEL FAILED TO INVESTIGATE THE DEFENDANTS ONLY DEFENSE. IT IS NOT SPECULATION TO SAY COUNSEL WAS INEFFECTIVE BECAUSE HE DIDN'T HAVE A FIRM COMMAND OF GOVERNING LAW. EX PARTE DUFFY, 607 S.W. 2d 507, 516 (TEX.CR.APP. 1980).

FURTHER, COUNSEL DEFICIENT PERFORMANCE HARMED BROWN WHEN HE ADMITTED TO DENYING BROWN COMPULSORY PROCESS WHEN BROWN ASKED TO SUBPOENA "EXPERT" WITNESS. TEX.R.EVID. 702, 703, AND 705(a). COUNSEL HAS A DUTY TO MAKE REASONABLE

(22)

PRE TRIAL INVESTIGATIVE EFFORTS TO BASE A DECISION NOT TO PRESENT A MITIGATION CASE BASE ON A THOROUGH UNDERSTANDING OF AVAILABLE EVIDENCE WIGGINS V. SMITH, 539 SW 2d (2003), QUOTING STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984). PERHAPS ON CROSS-EXAMINATION OR CALLING THE EXPERT WITNESS AS A WITNESS IN BROWN'S FAVOR WOULD HAVE PRODUCED EXCULPATORY EVIDENCE OR EXPLAINED WHY PARTIAL OF THE TIME WAS MISSING OR SKIPPED OUT OF SEQUENCE. PERHAPS HE WOULD HAVE EXPLAINED WHY THE VIDEO STOPPED BEFORE BROWN ENTERED THE ELEVATOR; PERHAPS THIS WASN'T THE ORIGINAL VIDEO THAT HE HANDED OVER AND IT WAS UNLAWFULLY ALTERED. THE ALLEGED OFFENSE HAPPENED AT 1PM APPROXIMATELY; BROWN'S MOTHER ALLEGEDLY PUSHED HIM ON THE ELEVATOR, BROWN ALLEGEDLY WAS LOOKING AT THEM. THE VIDEO IS ~~█████~~ VAGUE WITHOUT THIS EXCULPATORY EXPERT WITNESS [MELENDEZ-DIAZ V. MASSACHUSETTS, 577 U.S. _____ 2009, AND BULLCOMING V. NEW MEXICO, 564 U.S. _____ 2011, THE COURT HELD THAT ADMITTING A LAB CHEMIST'S ANALYSIS INTO EVIDENCE WITHOUT ~~██████~~ HAVING HIM TESTIFY VIOLATED THE CONFRONTATION CLAUSE]. SEE POINTER V. TEXAS, 380 U.S. 400, 85 S.Ct. 1065 (1965); ALSO EX PARTE WOODS, 176 SW 3d 224 (TEX. CR. APP 2005) COUNSEL DUTY TO SEEK OUT AND INTERVIEW POTENTIAL WITNESS. BROWN HAD THE RIGHT TO CROSS-EXAMINE THE VALIDITY AND MEANING OF THE VIDEO(S).

STRATEGIC CHOICES MADE AFTER LESS THAN COMPLETE INVESTIGATION PREVENTS A REASONABLE PROFESSIONAL JUDGMENT WHICH AREN'T "STRATEGIC" AT ALL, ESPECIALLY WHEN COUNSEL FAILED TO CALL MATERIAL WITNESS, BROWN'S MOTHER, AN EXCULPATORY WITNESS WHOM HAD FIRST HAND KNOWLEGE OF THE EVENTS.

(23)

THE U.S. SUPREME COURT RULED IN CRAWFORD V. WASHINGTON, 541 U.S. 36 (2003), THAT ADMITTING TESTIMONIAL STATEMENTS UNDER HEARSAY EXCEPTION DOES VIOLATE THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT. BROWN'S MOM COULD HAVE TESTIFIED THAT BROWN WAS INDEED TALKING TO HER AND TALKING ABOUT A LAWSUIT AND THAT BROWN WAS FIGURATIVELY SPEAKING WHEN THE ELECTRIC CHAIR STATEMENT WAS MADE (NOTE: THE ELETRIC CHAIR STATEMENT WAS MADE IN CIVIL COURT ON THE STAND ALSO.) SHE COULD HAVE TESTIFIED THAT BROWN WAS NOT FACING HIS ACCUSERS OR LOOKING AT THEM, SHE COULD HAVE TESTIFIED THAT SHE DIDN'T PUSH HIM ONTO THE ELEVATOR, OR THAT BROWN DIDN'T SAY ALL THE STATEMENTS THAT ARE ALLEGED. IN CASES SUCH AS THIS WHERE THERE ARE NO PHYSICAL EVIDENCE AND FACTS ARE BASED ON TESTIMONY, ANY DENIAL OF THIS EXCULPATORY WITNESS VERSIONS OF FACT HARMED BROWN'S DEFENSE. THE C.O.A. ERRED SAYING THE ATTORNEY INTRODUCE EVIDENCE THROUGH QUESTIONING OF DEPUTIES AND BROWN. TEX. R. EVID. 706(d).

BROWN'S ATTORNEY DIDN'T HAVE A CLOSING ARGUMENT AFTER THE GUILT/INNOCENCE PHASE. HE DIDN'T EVEN OBJECT TO PROSECUTOR'S CLOSING ARGUMENT WHEN HE SAID THE STATE PROVED EVERY ELEMENT BEYOND A REASONABLE DOUBT. BLUE V. STATE, 41 S.W. 3d 129 (TEX. CR. APP. 2000). AS POINTED OUT IN BLUE, THE COURT CAN TAKE NOTICE OF FUNDAMENTAL ERRORS AFFECTING SUBSTANTIAL RIGHTS ALTHOUGH THEY WERE NOT BROUGHT TO THE COURT. THE BLUE COURT FOUND IT WAS NOT NECESSARY FOR COUNSEL TO OBJECT FOR ERROR TO BE PRESERVED. COUNSEL ASKED BROWN INCRIMINATING QUESTIONS LIKE "DID YOU SAY YOU KNEW WHERE [T]HEY LIVED,

(24)

[THEY]," while he was on the stand, violating his Fifth Amendment by trying to get Brown to be a witness against himself. He didn't object when the prosecutor badgered Brown with "suggestive [statements]" opposed to "typical [Q]uestions". Also, no reasonable defense attorney would have used District Attorney murders to show why defendant accuser's may have been in fear, it would have been more effective to use the current retaliation allegation against District Attorney Rosemary Lehmberg that was dismissed for its failure to prove the harm element. On top of it all, trial was about 30-minutes. Thacker v. Payton, 206 Va. 771, 146 S.E. 2d 176 (1966) because counsel's incapacity, incompetent, inert, and grossly deficient performance demonstrate such serious errors that attorney was not functioning as counsel and deprived him a fair trial. Strickland, 466 U.S. at 687

Having determined that counsel's failure to object to altered evidence, a defective indictment, or the prosecutor's closing argument, [and] his failure to call witnesses in Browns favor, failure to investigate, file pre-trial motion and tried to get Brown to be a witness against himself, was deficient, this court will address (2) did deficient performance prejudice Brown's defense. In Nelson v. State 149 S.W. 3d 175 (Tex. Cr. App. 1976) the court stated: The second prong of Strickland requires the defendant affirmatively prove prejudice. There is a reasonable probability that but for the counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a

(25)

PROBABILITY SUFFICIENT TO UNDERMINE THE CONFIDENCE IN THE OUTCOME. BUTLER V. STATE, 716 S.W. 2d 48, 54 (TEX. CR. APP. 1986); EX PARTE WELBORN 785 S.W. 2d 391 (TEX. CR. APP. 1990). WHEN REVIEWING THE TOTALITY OF THE REPRESENTATION PROVIDED BY BROWNS ATTORNEY [THOMPSON V. STATE 9 S.W. 3d 808, 813 (TEX. CRIM. APP. 1999)] IT IS NOT SPECULATION TO SAY ATTORNEY CONTRABUTED TO BROWN'S CONVICTION AND ABRIDGED CONSTITUTIONAL RIGHTS ENTITLED TO HIM. BROWN IS SERVING A 15 YEAR SENTENCE UNDER TEX. C. CRIM. PROC. ART. 42.12 §3g; GOV'T. C. § 508.149 AND DOESN'T KNOW THE OFFENSE. BROWN LOST THE BENEFIT OF A PLEA BARGAIN BECAUSE OF COUNSEL'S INCOMPETENCE.

THOMAS V. BETO, 423 F.2d 642 (5th CIR. 1970); EX PARTE AXEL, 757 S.W. 2d 369 (TEX. CR. APP. 1988) IF YOU WERE INDIGENT AND HAD A COURT-APPOINTED ATTORNEY THE ATTORNEY OR THE COURT MUST ADVISE YOU OF: (A) YOUR RIGHT TO APPEAL (B) THE PROCEDURE AND TIME LIMITS INVOLVED; AND (C) YOUR RIGHT TO APPOINTED COUNSEL ON APPEAL. IN DESCRIBING THE "MANDATORY AND JURISDICTIONAL" NATURE OF THE RULE AND ITS JUSTIFICATION, WE MIGHT AS WELL HAVE BEEN DESCRIBING (T.R.A.P) 25.2(d) THE COURTS CERTIFECATION OF THE DEFENDANTS RIGHT TO APPEAL. UNDER 25.2 (a)(2) THE NOTICE TO INFORM THE DEFENDANT OF HIS RIGHT CONCERNING AN APPEAL, AS WELL ANY RIGHT TO FILE PDR PRO SE, WITH HIS SIGNITURE AND A COPY GIVEN TO HIM. TRIAL COUNSEL'S DEFICIENT PERFORMANCE, PRE-TRIAL AND DURING TRIAL, FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS, STRICKLAND SUPRA, WHEN BASED ON THE TOTALITY OF THE REPRESENTATION FRANGIAS V. STATE, 392, S.W. 3d 642, 653 (TEX. CR. APP. 2013). WE NOW LOOK TO THE ERROR

(26)

THAT COUNSEL FAILED TO ADVISE BROWN OF HIS RIGHT TO APPEAL (ORALLY OR IN WRITING), FAILED TO ASSIST BROWN AS A MATTER OF RIGHT IN PERFECTING AN APPEAL GIDEON V. WAINWRIGHT 372 U.S. 335, 339, 344, 9 L.Ed. 2d 799, 802, 805, 83 S.Ct. 792, 93 A.L.R. 2d 733 (1963). BROWN SUFFICIENTLY INDICATED IN HIS PRO SE MOTION FOR NEW TRIAL AND PRO SE MOTION TO APPEAL THAT COUNSEL WAS INEFFECTIVE, HE ALSO FILED A MOTION FOR APPELLATE COUNSEL WITH HIS MOTION TO APPEAL. APPELLATE COUNSEL WAS NOT APPOINTED UNTIL AFTER BOTH THE THIRTY-DAY AND SEVENTY-FIVE DAY TIME PERIOD IN WHICH TO HAVE A HEARING ON A MOTION FOR NEW TRIAL HAD EXPIRED, CLEARLY DENYING BROWN EFFECTIVE COUNSEL TO ADOPT HIS PRO SE MOTION FOR NEW TRIAL ON ITS MERITS OF INEFFECTIVE COUNSEL AT TRIAL AND INSUFFICIENT EVIDENCE OR ENABLE APPELLATE COUNSEL TO FILE HER OWN DURING THIS CRITICAL STAGE. COOK V. STATE, 240 S.W. 3d 906, 911 (TEX.CR.APP. 2007). BROWN WAS UNWILLING TO PARTICIPATE WITH COUNSEL BECAUSE (1) COUNSEL IS INCOMPETENT AND HIS INCOMPETENCE PREJUDICED HIM (2) IT WAS SOLELY TO REDUCE THE SENTENCE, WHEREAS, BROWN WANTED A NEW TRIAL ON THE IMPROPER JUDGMENT. THIS IS [COERCION] BY PEN.C. § 1.07(a)(9)(C)(F). BROWN'S TRIAL COUNSEL FILED A MOTION FOR ADDITIONAL FUNDS FOR INVESTIGATOR (HIS GIRLFRIEND) THEN THE NEXT DAY APRIL 4, 2014 HE WITHDREW AS COUNSEL. BOTH MOTIONS WERE GRANTED. ANY KIND OF PROCEDURAL DEFAULT, OR WAIVER, OR OMISSION SHOULD BE A REFLECTION ON TRIAL COUNSEL'S DEFICIENCY SATISFYING THE CAUSE AND PREJUDICE TEST SET OUT IN FRANCIS V. HENDERSON, 425 U.S. 536, 48 L.Ed. 2d 149, 96 S.Ct. 1708 (1976) BECAUSE THE EFFECT OF UNFAIR PREJUDICE OUTWEIGHS PROBATIVE VALUE SUBSTANTIALLY. THE APPELLATE COURT SHOULD HAVE GRANTED

(27)

THE MOTION TO ABATE APPEAL BECAUSE ATTORNEY MADE A FARCE OF THE TRIAL ESSENTIALLY BY NOT PROVIDING ASSISTANCE WITHIN A REASONABLE RANGE OF PROFESSIONAL COMPETENCE, SEE UNITED STATES V. DECOSTER, 159 U.S. APP. D.C. 326, 487 F.2d 1197 (1973); UNITED STATE EX REL. WILLIAMS V. TWOMEY, 510 F.2d 634, 640 (CA7 1975); UNITED STATES V. KATZ 425 F.2d 928 (CA2 1970).

## CONCLUSION

WHEN BROWN WAS AFFORDED PARTIAL EVIDENCE, PARTIAL DEFENSE, PARTIAL WITNESSES, PARTIAL REPRESENTATION, AND A PARTIAL CHARGE, IT IS LEGALLY-FACTUALLY SUFFICIENT TO CONCLUDE HE HADN'T RECEIVED A FAIR AND ~~IMPAR~~ IMPARTIAL TRIAL.

## PRAYER

FOR THE REASONS ADDRESSED IN THIS PDR, PETITIONER PRAY THIS COURT FINDS REVERSIBLE ERROR (T.R.A.P.) 61.1(a)(b) AND RENDER A JUDGMENT PURSUANT (T.R.A.P.) 60.2(e) VACATING THE JUDGMENT OF THE LOWER COURTS AND DISMISS THE CASE.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THIS 24th DAY OF JUNE, 2015, A COPY OF THE FOREGOING DOCUMENT WAS MAILED BY DELIVERING IT TO A PRISON OFFICIAL FOR MAILING UNDER THE INDIGENT POLICY, TO THE CLERK FOR THE COURT OF CRIMINAL APPEALS P.O. BOX 12308, CAPITOL STATION AUSTIN, TEXAS, 78711, AND SERVED UPON ROSEMARY LEHMBERG, TRAVIS COUNTY DISTRICT ATTORNEY'S OFFICE, P.O. BOX 1748 AUSTIN, TX 78701

(28)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00760-CR

**James Arthur Brown, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-13-300630, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The events forming the basis for this appeal originate from proceedings in which James Arthur Brown's parental rights to his daughter L.B. were terminated. Subsequent to the termination ruling, Brown was charged with three counts of retaliation for allegedly threatening the following three individuals who were involved in the proceeding: (1) the assistant district attorney who represented Child Protective Services during the hearing, Jannice Joseph; (2) the caseworker assigned to the case, Sara Laney; and (3) L.B.'s guardian ad litem, Cynthia Dyar. *See* Tex. Penal Code § 36.06 (setting out elements of offense of retaliation and explaining that offense is third-degree felony). The indictment contained an enhancement paragraph listing prior felony offenses purportedly committed by Brown. *See id.* § 12.42(a) (authorizing enhancement of punishment for previous felony conviction). At the end of a bench trial, the district court determined that Brown was guilty of all three counts, found the enhancement paragraph to be true, and assessed

Brown's punishment at 15 years' imprisonment for each count with the punishments set to run concurrently. On appeal, Brown challenges the sufficiency of the evidence supporting his convictions, argues that the district court erred when it overruled his motion to quash the indictment, and urges that he was denied the right to effective assistance of counsel.[1] We will affirm the district court's judgments of conviction.

## DISCUSSION

**Legal Sufficiency**

In his first issue on appeal, Brown argues that the evidence supporting his convictions for retaliation is legally insufficient.[2] Under the Penal Code, an individual commits the offense of retaliation if, in relevant part, "he intentionally or knowingly harms or threatens to harm another by an unlawful act: (1) in retaliation for or on account of the service or status of another as a: (A) public servant." Tex. Penal Code § 36.06(a)(1)(A). In addition, the Code defines "public servant" as including "an officer, employee, or agent of government." *Id.* § 1.07(a)(41)(A). Moreover, the

---

[1] In addition to the brief filed by his attorney, Brown also filed a pro se brief that raises issues that are similar to the ones contained in the brief prepared by his attorney as well as some additional issues. However, given that Brown is represented by counsel, we do not address the issues raised in his pro se brief. *See Marshall v. State*, 210 S.W.3d 618, 620 n.1 (Tex. Crim. App. 2006) (explaining that defendants have no right to hybrid representation on appeal).

[2] On appeal, Brown also argues that the evidence is factually insufficient to support his conviction. However, the court of criminal appeals has clarified that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) (explaining that "we do not review the factual sufficiency of the evidence to support a jury's finding on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt").

2

indictment in this case alleged that Brown "did then and there intentionally or knowingly threaten" Joseph, Laney, and Dyar "by an unlawful act, to-wit: Assault and Aggravated Assault, in retaliation for or on account of" their "service or status . . . as [] public servant[s]."

The purpose of the retaliation statute is "'to encourage a certain class of citizens to perform vital public duties without fear of retribution.'" *Morrow v. State*, 862 S.W.2d 612, 615 (Tex. Crim. App. 1993) (quoting *Doyle v. State*, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983)). To constitute retaliation, a threat does not need to be direct, *Davis v. State*, 890 S.W.2d 489, 491 (Tex. App.—Eastland 1994, no pet.), nor does the threatened harm have to be imminent, *Coward v. State*, 931 S.W.2d 386, 389 (Tex. App.—Houston [14th Dist.] 1996, no pet.). In addition, the State does not have to prove that the actor intended to carry out the threat. *See Puckett v. State*, 801 S.W.2d 188, 194 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). Instead, "the evidence must establish the retributory element found in section 36.06(a)(1), i.e., that the unlawful act was committed in retaliation for or on account of another person's service as a public servant." *Helleson v. State*, 5 S.W.3d 393, 395 (Tex. App.—Fort Worth 1999, pet. ref'd). Moreover, "retaliatory intent can be inferred from the acts, words, and conduct of the accused." *Umstead v. State*, 440 S.W.3d 909, 916 (Tex. App.—Eastland 2014, pet. ref'd) (mem. op.).

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the

3

necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

During the trial, the State called Dyar, Laney, and Joseph to testify regarding their recollections of the threats allegedly made against them as well as the events leading up to those threats being made. In their testimonies, they each explained that they were part of a proceeding deciding whether Brown's parental rights should be terminated. Specifically, their testimony reflected the following: (1) that Dyar worked for the Travis County Office of Child Representation and acted as the attorney ad litem for Brown's daughter, L.B., during the proceeding; (2) that Laney worked for Child Protective Services and was the caseworker assigned to the case after L.B. was removed from her parents' custody; and (3) that Joseph worked for Travis County as an assistant district attorney and was assigned to the case regarding Brown's parental rights to L.B. Moreover, all three explained that Brown allegedly threatened them shortly after his rights were terminated and that he made the threats because of their involvement in the case.

Regarding the threats, Dyar testified that during the trial, Brown "showed some anger at periods" and that when the jury was reading its verdict, Brown "stormed out" of the courtroom "before the entire verdict was read." In addition, she explained that when she, Laney, and Joseph left the courtroom, Brown "started screaming at us," that he yelled to them that he would "'get the electric chair for what I do,'" that he knew "where [they] live[d]," that his life was over, and that they were not going to get his other daughter. Moreover, Dyar related that two or three deputies moved

between them and Brown to shield them after he made the threats, that the deputies later escorted Brown onto the elevator and followed him out of the courthouse to make sure that he left, that one of the deputies returned and informed them that it was safe for them to leave, and that the deputies escorted them from the courthouse.

When describing the exchange, Dyar explained that although Brown never used any of their names explicitly, Brown was looking at the three of them when he was talking and that she believed that his statements were intended for them. Moreover, she stated that she found the comments to be "incredibly scar[y]." In fact, she revealed that although she interacts with aggressive people because of her job, this exchange was "the scariest thing that someone" had ever said to her. Furthermore, she described Brown as "agitated, pacing back and forth" and stated that she believed that Brown was threatening them and not just expressing grief at the loss of his parental rights.

Next, Laney testified regarding her recollections. In her testimony, Laney related that Brown got upset during the termination hearing and left the courtroom after the verdict was read. Then, she revealed that when she left the courtroom with Dyar and Joseph, she noticed that Brown seemed agitated and was "pacing back and fourth."[3] Further, she stated that Brown started

---

[3] During the trial, two video recordings were introduced and played for the district court. The first ostensibly shows Brown leaving a courtroom shortly before a group of people leave the courtroom, and the second shows Brown moving back and forth in front of an elevator. Neither video contains any sound. On appeal, Brown contends that the contents of the videos are insufficient evidence of the alleged crimes. Given our ultimate determination that the testimony presented during the trial was sufficient to support his conviction, we need not consider whether the videos on their own would have constituted sufficient evidence. However, we do note that while the lack of sound and the angle of the cameras significantly hindered their evidentiary value, nothing in the contents of the videos is inconsistent with the alleged offenses in that they show Brown leaving the courtroom followed by courtroom deputies and a group of women.

5

making threats towards them, that the threats were targeted to them, and that he was looking at them when he made the threats. Regarding the threats, Laney explained that Brown was repeating phrases over and over again and that he told them that he "kn[e]w where [they] lived," would "get [them]," and "didn't care if [he] got the electric chair" or was arrested. Moreover, she testified that Brown's statements frightened her, that she was scared that Brown might actually know where she lived, and that she feared for her safety after hearing those statements. In fact, Laney communicated that she was so scared that she asked the police to send officers by to check on her "every couple of hours . . . to make sure [she] was okay." In addition to discussing the events at the courthouse, Laney expressed that prior to the trial, Brown made threatening phone calls to her. Specifically, Laney revealed that during one call Brown told her, "Take my baby, see what happens."

After Laney finished her testimony, Joseph was called to the stand. In her testimony, Joseph explained that during the termination proceeding, Brown made outbursts while she was speaking. Regarding the events that happened after trial, Joseph testified that after Brown's rights were terminated, Brown "got angry and he stormed out of court." Moreover, Joseph explained that after Brown saw her enter the hallway, he waited and did not get on the elevator. When describing Brown's demeanor, she expressed that he was very angry and was "pacing back and forth." Further, she described how Brown began to increase his volume when he noticed that she, Laney, and Dyar had entered the hallway. Next, Joseph recalled that Brown threatened her, Dyar, and Laney by repeatedly saying that he knew where they lived, that he was "going to get arrested for what [he did] when [he] c[a]me to" their homes, and that he was going to get the electric chair. When describing the incident, Joseph explained that Brown was looking right at them. In fact, she

6

stated that there was no doubt that he was looking at them and that "he was giving [her] the same look that he gave [her] throughout the entire trial." In her testimony, Joseph explained that Brown's statements made her "very concerned for [her] safety."[4]

Once Joseph finished her testimony, the State rested. Subsequently, Brown called to the stand three deputies who were assigned to the courtroom where the termination proceedings were held. First, Melissa Slone testified that when Brown first left the courtroom, he seemed upset but quiet. Further, Slone recalled that when Dyar, Laney, and Joseph entered the hallway, his demeanor became "elevated" and that he started speaking loudly. When describing Brown's statements, she recalled that he said that he could not "live without [his] kids" and that he knew "where [they] work[ed]." Although Slone testified that Brown was speaking loud enough for everyone in the hallway to hear, she assumed that he was talking to his mother who was standing with him in the hallway, but Slone also characterized the statement about where the women worked as a threat. Moreover, Slone recalled that Brown repeatedly pressed the elevator button and that he got on the first elevator that appeared. Slone also testified that although she was initially concerned about the safety of the three women, she felt that they were safe once he left the building.

Second, Porsche Arnold stated that although she heard Brown make statements in the hallway, including that he did not "care if [he] went to jail," she did not believe that he needed to be arrested because he made those statements when he was grieving the loss of his parental rights. In addition, Arnold explained that she could not tell who Brown was talking to when he made those

---

[4] In her testimony, Joseph also explained that she observed Brown writing down the personal information of L.B.'s foster mother when she testified. Moreover, Joseph recalled that this observation was troubling given that Brown had made threatening statements before the trial started.

7

statements, that he was looking at everyone in the hallway when he was talking, and that he got on the first elevator that arrived.

Third, Christopher Duncan testified that he heard Brown say that he was "not afraid of dying" and that he was not afraid of the electric chair. When describing these statements, Duncan stated that he felt that Brown was angry and upset but that he did not "see a threat."

After the three deputies finished their testimony, Brown testified on his own behalf regarding the incident and explained that after his parental rights were terminated, he talked with his mother in the hallway about filing a lawsuit. Moreover, he explained that he never said that he wanted to harm anyone and that he only mentioned being sent to the electric chair in reference to the civil suit that he might file. Furthermore, he expressed that he was distraught over the outcome of the proceeding, that he was speaking loudly with his mother, that he repeatedly pushed the elevator button because he wanted to get away from the three women, and that he left as soon as the elevator appeared. Finally, Brown admitted that he realized that Dyar, Laney, and Joseph were all public servants and that he was angry at each of them for their roles in terminating his parental rights.

When challenging the sufficiency of the evidence, Brown highlights the testimony by the deputies, particularly the portion indicating that they did not believe that Brown should have been arrested or that a threat had been made. Further, Brown points to the testimony demonstrating that he was devastated over the loss of his children and urges that any statements that he made stemmed from that grief. However, in light of all of the evidence summarized above as well as the reasonable inferences that the factfinder could have made from that evidence and given our standard of review for legal-sufficiency challenges, we conclude that the evidence is legally sufficient to support

8

Brown's conviction for retaliation as alleged in the indictment. *See* Tex. Penal Code § 36.06(a)(1)(A); *see also Davis*, 890 S.W.2d at 491 (concluding that statements made to caseworker from Child Protective Services during meeting regarding potentially terminating parent's rights were sufficient to establish retaliation). Accordingly, we overrule Brown's first issue on appeal.

**Motion to Quash**

In his second issue on appeal, Brown contends that the district court erred when it overruled his motion to quash his indictment. In his brief, Brown urges that the indictment is "fundamentally defective and insufficient to provide him notice of the offense charged" because the indictment does not specify the means by which he threatened to commit assault or aggravated assault.

Immediately after the district court determined that Brown was guilty of all three counts, Brown acting pro se asked the district court, "can I motion to quash the indictment? Because the indictment, it fails to prove the third element of harm in all three counts." After Brown finished speaking, the district court stated that it "believe[d] [his] motion is not timely after the trial has occurred," but the topic was not further discussed.

Because Brown was represented by counsel when he made his request, the district court had no duty to rule on the request. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) (explaining that trial court has no duty to rule on pro se motions where defendant is represented by counsel because criminal defendants are not entitled to hybrid representation). However, a trial court has the discretion to authorize hybrid representation, *Figueroa v. State*, 250 S.W.3d 490, 515 (Tex. App.—Austin 2008, pet. ref'd), and if a trial court elects to rule on a

pro se motion even though the defendant is represented by counsel, those rulings may be reviewed on appeal, *Robinson*, 240 S.W.3d at 922.

From the record presented on appeal, as summarized in relevant part above, it is not entirely clear that Brown actually moved to quash the indictment or that, if he did, the district court actually ruled on that request. Even assuming that the request was made and that the district court made a ruling, the ruling would not be subject to review by this Court. Brown's request was made orally, but motions to quash an indictment must be made in writing. *See* Tex. Code Crim. Proc. art. 27.10. Accordingly, "[a]n oral motion to quash or dismiss an indictment preserves nothing for review." *Owens v. State*, 437 S.W.3d 584, 586 (Tex. App.—Texarkana 2014, pet. granted).

Moreover, even assuming that the district court made a ruling on the request and that the request was made in a manner that would subject the ruling to appellate review, we would be unable to conclude that the district court erred by denying the request because it was not made until after the trial court determined that Brown was guilty. Under article 1.14 of the Code of Criminal Procedure, a defendant waives any right to object to a defect in an indictment if he does not object to the defect "before the date on which the trial on the merits commences." Tex. Code Crim. Proc. art. 1.14; *see Ortiz v. State*, No. 08-09-00148-CR, 2011 Tex. App. LEXIS 197, at *5 (Tex. App.—El Paso Jan. 12, 2011, pet. ref'd) (not designated for publication) (concluding that defendant's oral objection to quash filed on day of trial was not timely). Accordingly, a defendant may not complain about defects in an indictment that were not made before trial "[s]o long as the instrument presented to the trial court meets the constitutional requirements of a charging instrument." *Castro v. State*, 970 S.W.2d 699, 700 (Tex. App.—Corpus Christi 1998, pet. ref'd).

10

An indictment meets the constitutional requirements if it alleges that a person committed an offense over which the trial court has jurisdiction and if it contains allegations that "are clear enough that one can identify the offense alleged." *See Teal v. State*, 230 S.W.3d 172, 180-82 (Tex. Crim. App. 2007).

The indictment at issue in this case specified that Brown was the person being charged and generally tracked the language of the applicable statute by alleging that Brown was being charged with intentionally or knowingly threatening Dyar, Laney, and Joseph with the unlawful acts of assault and aggravated assault in retaliation for their service or status as public servants. *See* Tex. Penal Code § 36.06; *see also State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998) (providing that, in general, "an indictment tracking the language of a statute will satisfy constitutional and statutory requirements").

For these reasons, we cannot conclude that district court erred by denying Brown's motion to quash. *See Smith v. State*, 309 S.W.3d 10, 13-14 (Tex. Crim. App. 2010) (explaining that appellate courts review trial court's ruling on motion to quash indictment de novo). Accordingly, we overrule Brown's second issue on appeal.[5]

---

[5] In this issue, Brown also refers to two pro se motions to quash that he filed before the trial began and that were not ruled on by the district court. However, as explained above, Brown was represented by counsel and was not entitled to hybrid representation. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). Accordingly, the trial court had no duty to rule on the motions, and a district court's "decision *not* to rule on a *pro se* motion in this situation [is not] subject to review." *Id.*; *see Figueroa v. State*, 250 S.W.3d 490, 515 (Tex. App.—Austin 2008, pet. ref'd) (explaining that trial court is not obligated to consider pro se pretrial motions that were filed when accused was represented by counsel). Alternatively, given that the record does not demonstrate that Brown ever obtained a ruling from the district court on the motions or that the district court expressly refused to rule on the motions, Brown has failed to preserve any error regarding the two pro se motions filed before the trial. *See* Tex. R. App. P. 33.1(a) (providing that to preserve issue for appeal, record must show that complaint was made to trial court by timely motion and that trial court ruled on motion or refused to rule on motion); *Cortez v. State*, No. 05-13-01140-CR,

11

**Effectiveness of Counsel**

In his third issue on appeal, Brown contends that he was denied effective assistance of counsel. When presenting this claim, Brown urges that he was denied effective assistance because his attorney "did not file any pretrial motions," did not call his mother to the stand to testify regarding what she observed and heard in the hallway, and "did not subpoena the individual responsible for generating the video[s] entered into evidence at trial" even though Brown believed that the videos had been altered to portray him more negatively. In addition, Brown insists that he was denied effective assistance of counsel during a "critical stage" of the proceeding. Specifically, he argues that he was denied effective assistance of counsel during the 30 days in which a defendant has to file a motion for new trial. *See* Tex. R. App. P. 21.4(a) (setting out deadline for filing motion for new trial); *see also Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007) (explaining that "the time for filing a motion for new trial is a critical stage of the proceedings" and "that a defendant has a constitutional right to counsel during that period").

To succeed on an ineffectiveness claim, the defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). Evaluations of effectiveness are

---

2014 Tex. App. LEXIS 6094, at *2-3 (Tex. App.—Dallas June 4, 2014, no pet.) (mem. op., not designated for publication) (concluding that appellant did not preserve issue regarding his pro se motion to quash because he never obtained ruling from trial court after filing motion).

based on the totality of the representation. *Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider cumulative effect of counsel's deficiencies). Furthermore, even though a defendant is not entitled to representation that is error free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 392 S.W.3d at 653.

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "This is true with regard to the question of deficient performance . . . where counsel's reasons for failing to do something do not appear in the record." *Id.* (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Id.* If that opportunity has not been provided, as in this case, an appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

As set out above, most of Brown's ineffectiveness claims are based on his trial attorney's failures to act, and the record before this Court is not sufficiently developed to evaluate the alleged failures to act because "[n]either [his] counsel nor the State have been given an opportunity to respond to" the claims. *See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). In particular, the record does not reveal why his trial attorney did not file any pretrial motions and did

not call Brown's mother to the stand. Further, Brown does not identify any pretrial motions that should have been filed. In addition, although Brown contends that his mother would have provided testimony that any statements that he made in the hallway were the result of him being upset at the outcome of the termination proceeding and expressed his intent to file a lawsuit against the individuals involved in the proceeding, Brown's attorney introduced evidence regarding those topics through his questioning of the deputies and of Brown.

For these reasons, we cannot conclude that these two alleged mistakes seem so outrageous that no competent attorney would have made them.

In addition to the alleged failures described above, Brown also asserts that his attorney's representation was deficient because his attorney did not call to the stand the individual who prepared the two video recordings that were presented during the trial. As discussed earlier in Brown's first issue, the first video shows Brown leave a courtroom followed by courtroom deputies as well as another group of people, and the second video shows Brown from a different angle moving back and forth in front of an elevator. The videos did not record any sound, and they do not show Brown interacting with Dyar, Laney, Joseph, or anyone else. When Brown's attorney informed the district court that he was not calling as a witness the individual who provided the videos for trial, his attorney explained as follows:

> Mr. Brown asked that I subpoena to this hearing . . . the person who was responsible for deciding what video footage the Court got to see this morning. I've explained to Mr. Brown that I didn't think the Court would stand for that kind of subpoena, that it would be found irrelevant. So I did not.

14

Although the contents of the videos are not inconsistent with the allegations against Brown because they show Brown leaving the courtroom before the courtroom deputies and another group of people, they do not, as agreed by Brown, chronicle any criminal activity by Brown. Moreover, the events that they do capture, namely that Brown attended a court proceeding and left the courtroom before Dyar, Laney, and Joseph, were not disputed by Brown. Furthermore, although Brown contends that his attorney should have subpoenaed the individual who prepared the videos because the videos failed to fully document his movements or the location of the other individuals in the hall during the relevant time, the videos' deficiencies were discussed during the trial and are apparent when viewed.

In light of the preceding, we cannot conclude that Brown's attorney's decision to not call as a witness the person who prepared the videos falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688; *see also* Tex. R. Evid. 401 (defining relevant evidence as "evidence having any tendency to make the existence of *any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence") (emphasis added).

Turning to his claims regarding his representation following the trial, Brown does not contend that he did not have representation during the period in time in which a motion for new trial must be filed. *See* Tex. R. App. P. 21.4(a). Rather, he insists that although his trial counsel continued to represent him, he did not want his trial counsel to represent him. In fact, he notes that before the expiration of the 30-day deadline for filing a motion for new trial, he alleged in his pro se motion for new trial and his pro se motion to appeal that his attorney had provided ineffective

15

assistance of counsel during the trial. Moreover, Brown notes that despite the fact that he did not want to be represented by his attorney, his trial counsel did not file a motion to withdraw until well after the expiration of the 30-day deadline. Finally, Brown contends that if he had been appointed new counsel, his new counsel could have alleged in a motion for new trial that he was provided ineffective assistance of counsel and challenged the sufficiency of the evidence of his convictions.

Although Brown effectively communicates that he did not want his trial attorney to continue to represent him, Brown has not overcome the strong presumption that his attorney's conduct following the trial fell within the range of reasonable professional assistance. After Brown was convicted, his attorney filed a timely motion for new trial arguing that the convictions were "contrary to the Law and the evidence" presented during trial and requesting a new trial on the ground that the competency exam ordered by the district court revealed that Brown was suffering from an antisocial personality disorder at the time of the alleged crimes and during the trial. In fact, in a letter that Brown attached to his motion to abate this appeal, the district court explained that after Brown's attorney filed a motion for new trial, the district court scheduled a hearing on the motion but that "Brown refused to enter the courtroom. Thereafter, the Motion for New Trial expired by operation of law." Moreover, the district court explained that it "fully intended to reduce the sentence significantly but Mr. Brown refused to participate."

In addition, even though it is not necessary to further address the issue, we do note that effectiveness challenges must be considered in light of "the totality of the representation" provided by the attorney. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). During the trial, Brown's attorney regularly objected to testimony from the State's witnesses and thoroughly cross-

16

examined the State's witnesses regarding their recollections of the events in question. Regarding Dyar and Laney, Brown's attorney asserted potential inconsistencies between their testimony and the video recording admitted into evidence as well as their prior written statements. Furthermore, Brown's attorney asked Dyar if Brown might have been grieving when the events occurred, and she admitted that Brown was likely grieving. During the cross-examinations of the State's witnesses, Brown's attorney regularly suggested that Brown's arrest might have been an overreaction to an unrelated high-profile case that resulted in the death of a district attorney and his wife.

Once the State closed its case, Brown's attorney moved for a directed verdict. After the district court denied the request, as described above, Brown's attorney called four witnesses to the stand, including Brown, to help establish that Brown did not intend to threaten anyone after the termination proceeding. Moreover, during his closing argument, Brown's attorney argued that no unlawful act had been proven and that the State failed to meet its burden of providing proof establishing Brown's guilt beyond a reasonable doubt.

Finally, prior to the district court imposing its punishment, Brown's attorney called Tiffany Boyden, who was the mother of Brown's children, to testify on his behalf. In her testimony, Boyden expressed that after Brown's rights were terminated, "[h]e was suicidal, not homicidal." Moreover, she expressed that Brown was devastated about losing his children.

For all of these reasons, we overrule Brown's final issue on appeal.

## CONCLUSION

Having overruled all of Brown's issues on appeal, we affirm the district court's judgments of conviction.

17

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   May 12, 2015

Do Not Publish

18